### In re 500 FIFTH AVENUE ASSOCIATES, Debtor.

### Bankruptcy No. 92 B 44177.

United States Bankruptcy Court, S.D. New York.

Jan. 5, 1993.

Angel & Frankel, P.C. by Joshua Angel, Bruce Frankel and Laurence May, New York City, for debtor.

Shea & Gould by Eric Wainer, New York City, Sulmeyer, Kupetz, Baumann & Rothman by Irving Sulmeyer, Los Angeles, CA, for General Elec. Capital Corp.

## OPINION ON CLASSIFICATION OF CLAIMS AND RELIEF FROM THE AUTOMATIC STAY

TINA L. BROZMAN, Bankruptcy Judge.

Few issues in current bankruptcy practice are as litigated as that presented in

this dispute. General Electric Credit Corporation ("GECC") moves pursuant to Fed. R.Bankr.P. 3013 for a declaration that 500 Fifth Avenue Associates, the debtor in this single asset chapter 11 real estate case, has improperly classified certain claims pursuant to its plan of reorganization for the express purpose of being able to invoke the "cram down" provisions of 11 U.S.C. § 1129(b). Should I conclude that the debtor's classification scheme is improper, GECC then seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2), on the grounds that the debtor has no equity in its property and cannot confirm a plan of reorganization.

## I.

On July 24, 1992, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against the debtor by one of its general partners, Topp Corner Associates. The debtor, which owns a commercial building at 500 Fifth Avenue in Manhattan, did not controvert the petition and is now a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

GECC holds the first mortgage on the property. As of the filing date, GECC is owed approximately $157 million. It is far and away the estate's largest, yet not its only, creditor. Conflate, Inc. ("Conflate"), by assignment, holds a wraparound mortgage on the premises in the amount of $61,000,000, subordinate to the mortgage held by GECC. Moreover, the debtor owes unsecured creditors approximately $1.7 million. The debtor is also liable for administrative expenses of the estate which are not now at issue.

Shortly after entry of the order for relief was granted, GECC sought to lift the automatic stay so that it could enforce a judg-

ment of foreclosure it had obtained prepetition. GECC's motion rested on its argument that the debtor was incapable of confirming a plan of reorganization over GECC's objection, since GECC's deficiency claim would swamp any class of unsecured creditors into which it was placed. Just before the hearing on this motion, the debtor submitted a draft "skeletal" plan of reorganization and disclosure statement.

At the hearing on GECC's original lift stay motion, GECC and the debtor agreed that the debtor lacks equity in the property.[1] But since this case was only in its embryonic stages, I had only the rough outline of a reorganization plan before me, and the legal issues raised by GECC had not been fully briefed nor had they been previously decided in any recently published decisions by this District or by the Second Circuit[2], I declined to hold that the debtor had no likelihood of reorganization in prospect. Accordingly, I denied GECC's motion. However, I directed the debtor to submit its fleshed out disclosure statement and plan of reorganization on an expedited basis. About a month later, as promised, the debtor complied.

The debtor's plan of reorganization provides for eight classes of claims and one class of interests. Class 1 includes all allowed administrative expenses of the debtor's estate. Class 2 consists of all allowed priority claims. Class 3 comprises all allowed priority tax claims. Included in Class 4 are all allowed secured claims exclusive of the claims of GECC and Conflate. Pursuant to the terms of the plan, these classes of claims will be paid in full when they come due or "on the effective date or as soon as practicable thereafter." As such, they are considered unimpaired classes and cannot vote on the plan. The disclosure statement asserts that there are

---

1. The parties disagree with respect to the property's value. The debtor argues that the property is worth approximately $53.5 million. GECC suggests that the property is worth approximately $85 million. Regardless of whose appraisal is the more accurate, it is inescapable that the debtor lacks equity in this property since GECC's secured claim is approximately $157 million.

2. My colleague, Judge Schwartzberg, had addressed the issue years earlier in *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bankr. S.D.N.Y.1982). While other courts in this Circuit have since addressed separate classification of claims at both the bankruptcy and district court levels, the issue has not since been revisited by this district.

actually no claimants in classes 2 through 4.

It is the debtor's classification scheme for classes 5 through 9 that has caused this litigation. Class 5, which is impaired, consists of GECC's allowed secured claim. Had GECC elected treatment pursuant to section 1111(b)(2) of the Code, GECC would have retained its security interest on the property in the full amount of approximately $157 million. Of that amount, $53.5 million would have borne interest at a rate of LIBOR + 3% per annum, to be paid monthly in arrears on the first day of each month for a term of ten years. The remaining $103.5 million would not have borne interest. During this ten year term, GECC would have received interest payments only and would have received the balloon payment (principal balance, less interest paid), on the tenth anniversary of the effective date of the plan. The alternative treatment, which is what GECC has chosen by foregoing its right to elect the treatment provided by section 1111(b)(2), is that GECC's secured claim will be fixed at a value not to exceed $53.5 million, bear interest and be paid in the same manner as just noted. The unsecured deficiency portion of GECC's claim will be treated in class 8.

Conflate's $61 million wraparound mortgage constitutes class 6. The debtor's plan provides that Conflate will receive payments in an amount equal to 10% of positive cash flow after operating expenses (including interest on GECC's $53.5 million claims) for a term of ten years beginning the first fiscal year after the effective date of the plan. These payments are to be credited against principal. Notwithstanding how the plan was drafted, during oral argument the debtor conceded that Conflate's wraparound mortgage is not presently secured inasmuch as GECC's lien is undersecured.

Included in class 7, which is impaired, are the claims of holders of allowed recourse unsecured claims against the debtor. Holders of these claims will receive on the effective date (or as soon thereafter as is practicable) cash equal to 1% of their allowed claims. Within the next thirty days, these claimants will also receive cash payments equaling 89% of their allowed recourse claims from funds provided by the limited partners' new equity contributions. The debtor estimates that the claims in this class total $1.7 million.

According to the disclosure statement, the only claim that would fall within class 8 will be the unsecured deficiency claim of GECC, now that GECC has determined not to make the 11 U.S.C. § 1111(b)(2) election.[3] Pursuant to the debtor's plan, GECC will receive cash equal to 1% of the amount of its unsecured deficiency claim on the effective date. Class 8 is impaired.

Class 9 consists of the partnership interests of the debtor's various partners. Jerry Williams and Stephen Brown, the debtor's limited partners, will make capital contributions totaling $8 million, in return for which the general and limited partners will retain their interests (although no partnership distributions will be made until Brown's and Williams' contributions have been fully repaid with interest). Therefore, the debtor states, class 9 is unimpaired and not entitled to vote.

## II.

Having made clear its intention to vote against confirmation, GECC contends that the debtor's classification scheme was impermissibly created. GECC's arguments are two. First, GECC claims that the debtor's treatment of Conflate's wraparound mortgage is improper. The plan cannot separate Conflate from the rest of the unsecured creditors and treat Conflate as having made the section 1111(b)(2) election, says GECC, because only the creditor can make the election and then only if the undersecured creditor holds an interest in

---

**3.** As previously noted, there is some debate as to the value of GECC's potential unsecured deficiency claim. If the debtor's value of the property is utilized, GECC's unsecured deficiency claim would be $103.5 million ($157 million— $53.5 million). If GECC's value for the property is utilized, GECC's potential undersecured deficiency claim would equal $72 million ($157 million—$85 million).

the collateral that is of more than inconsequential value. GECC's second objection concerns the debtor's classification of GECC's class 8 unsecured deficiency claim separately from Conflate's class 6 unsecured claim [4] and from the class 7 unsecured claims. GECC argues that the debtor has separately classified these claimants for the sole purpose of gerrymandering an accepting impaired class of claimants so that it may confirm the plan over GECC's objection.[5] Were the debtor to classify all unsecured claimants together it could not pursue this route because no impaired class would vote to accept the plan.

Predictably, both the debtor and Conflate oppose GECC's motions, arguing that issues of plan confirmation should not be considered on motions for relief from the automatic stay. They also argue that not only is the debtor's classification scheme permissible, but that it is ·desirable from the reorganization perspective in that this plan will guarantee the debtor's continued viability. The critical issue, then, turns on whether the debtor can confirm its plan over GECC's opposition, or, in more colloquial jargon, cram down GECC by isolating, under section 1122(a) of the Code, GECC's unsecured deficiency claim as a class distinct from the unsecured claims of Conflate and of the recourse unsecured creditors simply to create an impaired consenting class under section 1129(b) of the Code.

### III.

1. Standards For Relief From Stay

Section 362(a) of the Bankruptcy Code provides that upon the filing of a bankruptcy petition, a secured creditor is automatically stayed from acting to realize the value of the collateral received from a debtor. Although the stay is pervasive and one of the most important tools available to a debtor seeking to reorganize, it may have pernicious effects; because the bankruptcy laws do not sanction the stay for stay's sake, section 362(d) allows the court to grant relief from the stay. *In re Diplomat Electronics Corp.*, 82 B.R. 688, 691–93 (Bankr.S.D.N.Y.1988); *cf. In re 266 Washington Associates*, 141 B.R. 275, 281 (Bankr.E.D.N.Y.1992), *aff'd*, 147 B.R. 827 (E.D.N.Y.1992). In particular, the secured creditor may obtain relief from the stay pursuant to section 362(d) when, with respect to the property which is the secured creditor's collateral, (A) the debtor does not have any equity in the property and (B) such property is not necessary to an effective reorganization.

■ Section 362(g) sets forth the parties' burdens with respect to lift ·stay motions. As the Supreme Court noted in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988), the moving party carries the burden of proof only as to the debtor's equity in the property, while the party opposing relief from the stay carries the burden as to all other issues. Here, the debtor has acknowledged that it has no equity in the property. Hence, whether relief from the stay is appropriate depends upon whether the property is necessary for an effective reorganization.

■ "The definition of 'effective reorganization' articulated by the Supreme Court in the *Timbers* case necessarily implicates,

---

4. Conflate's subordinate wraparound mortgage, as discussed in text, is properly classified as an unsecured claim. Regardless of whether the property is valued at $53.5 million or $85 million, GECC, the first mortgagee, is undersecured. Thus, Conflate, the subordinate mortgagee, may not make the section 1111(b)(2) election and should be properly classified as an unsecured claimholder.

5. Assuming, as GECC asserts, that it will cast its vote against confirmation, it would be impossible for the debtor to confirm a plan of reorganization over GECC's objecting vote if all unsecured claimants were grouped in one class. GECC has a bifurcated unsecured claim that would swamp such a class. That is, using the debtor's value for the property ($53.5 million), GECC's deficiency claim would constitute 62.2% of all the unsecured claims in this case. Alternatively, using GECC's appraisal value for the property ($85 million), GECC's deficiency claim would still comprise over 53.4% of all unsecured claims. As a result, the debtor could not meet the mandate of 11 U.S.C. § 1126(c).

to a degree, consideration of the plan confirmation standards of 11 U.S.C. § 1129." *In re 266 Washington Associates*, 141 B.R. at 281; *see also In re Channel Realty Assocs. Ltd. Partnership*, 142 B.R. 597 (Bankr.D.Mass.1992). In *Timbers*, the Court interpreted the phrase "effective reorganization" to require:

> [N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. at 375–76, 108 S.Ct. at 633. The test enunciated in *Timbers*, albeit as *dictum*, requires a showing by the debtor and a determination by the bankruptcy court that the plan at issue is not patently unconfirmable and has a realistic chance of being confirmed. *In re 266 Washington Associates*, 141 B.R. at 181; *cf. In re White Plains Development Corp.*, 140 B.R. 948, 951 (Bankr.S.D.N.Y. 1992); *In re Northport Marina Assocs.*, 136 B.R. 903, 909 (Bankr.E.D.N.Y.1992); *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr.D.Mass.1991); *In re Ashgrove Apartments of Dekalb County, Ltd.*, 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990).

2. Classification Issues

(a) *Section 1111(b)(2) Election*

To understand the obstacles blocking this debtor's road to confirmation, one must first consider the nature of GECC's and Conflate's claims. This necessitates exploration of 11 U.S.C. §§ 506(a) and 1111(b).

■ Section 506(a) of the Bankruptcy Code provides that a lender's secured claim is limited to the value of its collateral; any difference between the amount of the debt and the value of the collateral, that is, the deficiency claim, is deemed an unsecured claim, even if under other applicable law the creditor's claim is nonrecourse. "Under section 1111(b)(1)(A), non-recourse claims secured by liens on property of the estate ... are treated as though they were recourse claims, with the claimant having an unsecured claim against the debtor to the extent of a deficiency." *In re 266 Washington Associates*, 141 B.R. at 283.

■ The class holding such claims is given an option; it may retain this special recourse treatment or make the section 1111(b)(2) election pursuant to which each claim in the class is considered fully secured, even if the value of the collateral is less than the claim and notwithstanding section 506(a). While such an election is statutorily restricted to the secured creditor, *In re Channel Realty Assocs. Ltd. Partnership*, 142 B.R. at 600; *In re 266 Washington Associates*, 141 B.R. at 285–86, it is entirely precluded if the creditor's interest in such property is of an inconsequential value. 11 U.S.C. § 1111(b)(1)(B). Thus, if a lien has no value, then the holder of that claim cannot make the section 1111(b)(2) election. *In re Atlanta West VI*, 91 B.R. 620, 624 n. 5 (Bankr.N.D.Ga.1988); 5 L. King, *Collier on Bankruptcy* ¶ 1111.-02[4] (15th ed. 1992). Moreover, for purposes of the section 1111 election (as with other reorganization plan issues), the collateralized property should be valued as of, or close to, the effective date of the plan, rather than by some speculative and presumptively appreciated future value. 5 L. King, *Collier on Bankruptcy* ¶ 506.4[2] at 506–37 (15th ed. 1992). As the Code points out, valuation should be determined in light of the purpose for that valuation. 11 U.S.C. § 506(a).

■ GECC has chosen to bifurcate its claim, as a result of which, under the proposed plan, its secured claim will be the sole occupant of class 5, while its unsecured deficiency claim, by itself, will occupy class 8. Since the debtor concedes that Conflate, by virtue of its subordinate lien, is completely unsecured, Conflate will not have the benefit of the section 1111(b)(2) election and therefore its claim (the only claim occupying class 6) will be treated as

wholly unsecured.[6]

### (b) *Plan Confirmability* [7]

■ There are two ways in which a plan of reorganization may be confirmed. The plan may be agreed to by the affirmative vote of all impaired [8] classes. 11 U.S.C. § 1129(a)(8). This consensual means of plan negotiation and confirmation is among the paramount goals of chapter 11. Yet should an impaired class vote against confirmation, all hope is not lost, for a plan can be confirmed over the vote of dissenting classes of claims under the cramdown provision of 11 U.S.C. § 1129(b) if all the requirements of subsection (a) of section 1129 are satisfied, excluding (a)(8), and the bankruptcy court is satisfied that the plan does not discriminate unfairly and is fair and equitable with respect to each class of impaired claims that has not accepted the plan. *In re 266 Washington Associates,* 141 B.R. at 282; *In re Cantonwood Associates Ltd. Partnership,* 138 B.R. 648, 652 (Bankr.D.Mass.1992). But

the requirement of approval by at least one impaired accepting class (not counting the votes of insiders) must be met. *In re Lumber Exchange Bldg. Ltd. Partnership,* 968 F.2d 647, 650 (8th Cir.1992); *In re Bryson Properties, XVIII,* 961 F.2d 496, 501 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *In re Greystone III Joint Venture,* 948 F.2d 134, 137–38 (5th Cir.1991), *withdrawn in part, reinstated in part on reh'g* (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); 11 U.S.C. § 1129(a)(10).

■ A class of claims accepts a plan if more than one half in number and at least two-thirds in amount of claims voting in a class favor the plan. 11 U.S.C. § 1126(c). Clearly, then, a debtor's composition of its classes has a substantial impact upon its chances of successfully cramming down a plan. In this case, it behooves the debtor to separately classify GECC's unsecured deficiency claim from the other unsecured

---

**6.** Contrary to Conflate's assertion (for which it provides no support) that the value of the property may appreciate in the future, that potentiality is of no moment in determining whether Conflate may make the section 1111(b) election. As of the effective date of the plan, Conflate will have a lien of inconsequential value. Were I to allow Conflate the right of election simply because it forecasts appreciation in the property's value, I effectively would be writing subsection (b)(2)(i) of section 1111 out of the Code. A creditor could simply argue that although its lien had no value at confirmation, the fact that the property may one day appreciate should be enough to allow it the section 1111(b) election. Such a statutory interpretation is untenable.

**7.** At the December 17, 1992 hearing on GECC's motion, the debtor urged that GECC's objections to the debtor's classification scheme were not ripe for determination because issues of cramdown, feasibility and classification of claims ought be considered only at confirmation.

Federal Rule of Bankruptcy Procedure 3013 provides a mechanism through which a party in interest may seek determination of the status and classification of its claim. Issues of claim classification raised pursuant to a Rule 3013 may be ripe for determination prior to a confirmation hearing. *In re Resorts Intern., Inc.,* 145 B.R. 412, 466 (Bankr.D.N.J.1990); *In re Main Road Properties,* 144 B.R. 217, 218 (Bankr.D.R.I. 1992); *In re Elsinore Shore Associates,* 91 B.R. 238, 251 (Bankr.D.N.J.1988); *In re Meadow*

*Glen, Ltd.,* 87 B.R. 421, 427 (Bankr.W.D.Tex. 1988); *In re Monroe Well Service, Inc.,* 80 B.R. 324, 333 (Bankr.E.D.Pa.1987). As the Advisory Committee Note to Rule 3013 explains, the rule recognizes that it may be desirable or necessary to establish proper classification before a plan can be formulated and provides for a court hearing on such notice as the court may direct. *In re DRW Property Co. 82,* 60 B.R. 505, 511 (Bankr.N.D.Tex.1986).

I, too, was concerned with the ripeness of this classification motion (and, hence, of the lift stay motion) because GECC had not declared whether it would elect to be treated as fully secured. Had it so elected, this classification dispute would evaporate. As I explained to GECC, I could not shorten GECC's time to exercise its right of election, *see* Rule 9006(c) of the Federal Rules of Bankruptcy Procedure, and I did not believe that there existed any dispute for me to resolve until GECC exercised or was permanently foreclosed from exercising its right of election. Understanding this, GECC voluntarily determined at the hearing to have its claim bifurcated under section 506(a) of the Code and declined to exercise its right to elect under section 1111(b)(2). Accordingly, I agreed that the dispute had ripened to the point where I could reach the merits.

**8.** An impaired class, in simple terms, is one whose claims are materially affected by a plan. The definition of impairment is set forth in section 1124 of the Bankruptcy Code.

claims, since the sheer size of that deficiency claim would allow GECC to block confirmation by controlling the vote of a single unsecured creditor class.[9] Under that scenario, there would be no impaired accepting class under section 1129(a)(10) and the debtor would be barred from confirming its plan.

Not surprisingly, then, the first argument this debtor makes in support of its classification scheme rests on its perceived ability to flexibly classify GECC's claims, a flexibility which is vital to the effort to reorganize. The debtor purports to distinguish GECC's deficiency claim from the other unsecured claims because GECC's deficiency claim is a Code-created claim that would not exist outside of chapter 11. Unlike the debtor's other unsecured claims, this claim is not contractual in nature, does not include a right of recourse against the general partners of the debtor and would not exist if this case were converted to Chapter 7. Under any circumstance, the debtor argues, GECC would have no right against the general partners.

■ The statutory provision governing classification of claims is 11 U.S.C. § 1122(a). Section 1122 provides for classification of claims in a reorganization as follows:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests.
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Section 1122 requires substantial similarity between claims that are placed in the same class. *In re Bryson Properties, XVIII,* 961 F.2d at 502; *In re Greystone III Joint Venture,* 948 F.2d at 138. It does not require, however, that all substantially similar claims be placed within the same class, and grants some flexibility in classification of unsecured claims. *In re Bryson Properties, XVIII,* 961 F.2d at 502; *In re Greystone III Joint Venture,* 948 F.2d at 138; *In re Boston Post Road Ltd. Partnership,* 145 B.R. 745, 748 (Bankr.D.Conn.1992); *but cf. In re Mastercraft Record Plating, Inc.,* 32 B.R. 106, 108 (Bankr.S.D.N.Y. 1983), *rev'd on other grounds,* 39 B.R. 654 (S.D.N.Y.1984). Such flexibility is not unfettered, and courts have held with some consistency that:

> Although the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case, that discretion is not unlimited. There must be some limit on the debtor's power to classify creditors.... The potential for abuse would be significant otherwise.... If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed.

*In re Bryson Properties, XVIII,* 961 F.2d at 502, quoting *In re Holywell Corp.,* 913 F.2d 873, 880 (11th Cir.1990); *see also In re U.S. Truck Co., Inc.,* 800 F.2d 581, 586 (6th Cir.1986); *In re L.G. Salem Ltd. Partnership,* 140 B.R. 932, 935 (Bankr.D.Mass. 1992). As Judge Jones pointed out in *Greystone III:*

> ... if § 1122(a) [were] wholly permissive regarding the creation of such classes, there would be no need for § 1122(b) specifically to authorize a class of smaller unsecured claims, a common feature of plans in reorganization cases past

---

9. Utilizing the debtor's appraised value of the property, $53.5 million, it is clear that GECC's unsecured deficiency claim swamps the unsecured claims. Of the $166.2 million of total unsecured claims (GECC's $103.5 million unsecured deficiency claim + Conflate's $61 million unsecured claim + $1.7 million in trade creditors' unsecured claims), GECC's deficiency claim would constitute 62.2% of all unsecured claims. Were I to utilize GECC's appraised value of the property, $85 million, GECC's claim would still swamp the unsecured claims. Of the $134.7 million of total unsecured claims (GECC's $72 million unsecured deficiency claim + Conflate's $61 million unsecured claim + $1.7 million in trade creditors' unsecured claims), GECC's deficiency claim would constitute 53.4% of all unsecured claims.

and present. The broad interpretation of § 1122(a) adopted by the lower courts would render § 1122(b) superfluous, a result that is anathema to elementary principles of statutory construction.

948 F.2d at 138–39.

Thus, even under the flexible approach to classification, the rule in the courts of appeal which have reached the issue and in many other lower courts remains the same: "[T]hou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan ... if § 1122(a) permits classification of 'substantially similar' claims in different classes, such classification may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims." *In re Greystone III Joint Venture,* 948 F.2d at 139 (emphasis added); *cf. In re Lumber Exchange Bldg. Ltd. Partnership,* 968 F.2d at 649; *In re Bryson Properties, XVIII,* 961 F.2d at 502; *In re Holywell Corp.,* 913 F.2d at 880; *In re B & B West 164th Street Corp.,* 147 B.R. 832, 839 (Bankr.E.D.N.Y.1992); *In re Boston Road Ltd. Partnership,* 145 B.R. at 748; *In re Main Road Properties, Inc.,* 144 B.R. at 220; *In re 266 Washington Associates,* 141 B.R. at 286; *In re L.G. Salem Ltd. Partnership,* 140 B.R. at 935; *In re Cantonwood Associates Ltd. Partnership,* 138 B.R. at 653.

■ I am persuaded by the line of cases holding that although the debtor retains some flexibility in the classification of substantially similar claims, it may not separately classify claims only to conjure up an impaired, assenting class. The distinction between the recourse and nonrecourse claims is, to my mind, irrelevant since we are operating within the realm of chapter 11. "This distinction was considered and rejected by the Fifth Circuit in *Greystone III* and by the Fourth Circuit in *Bryson Properties, XVIII.*" *In re 266 Washington Associates,* 147 B.R. 827, 831. Section 1111(b)(1)(A) has eliminated in chapter 11 the legal distinction between nonrecourse deficiency claims and other unsecured claims. *In re 266 Washington Associates,* 141 B.R. at 285. "It makes no sense to suggest that a lender's deficiency claim is unique because its recourse rights arise only in chapter 11, since all of these issues only arise within chapter 11 in the first place ... The rights of various parties outside of chapter 11—whether in chapter 7 or outside of bankruptcy altogether—are irrelevant. The reality is that we are **inside** chapter 11 and subject to its parameters." Meltzer, *Disenfranchising The Dissenting Creditor Through Artificial Classification Or Artificial Impairment,* 66 Am.Bankr.L.J. 281, 299 (1992); *cf. In re Lumber Exchange Bldg. Ltd. Partnership,* 968 F.2d at 649; *In re Greystone III Joint Venture,* 948 F.2d at 139–40; *In re 266 Washington Associates,* 141 B.R. at 285. "Generally, unsecured creditors hold substantially similar claims; they are claimants of equal legal rank entitled to share pro rata in values remaining after payment of secured and priority claims." *In re 266 Washington Associates,* 141 B.R. at 282.

The debtor's obligations to both GECC and Conflate constitute nonrecourse debt. Within the framework of chapter 11, the deficiency claims are allowed, unsecured claims (unless the creditor is permitted to and exercises the section 1111(b) election) no different from the obligations owed to the recourse creditors, even though outside of the bankruptcy arena recourse creditors may be able to recover from an individual general partner. Since these are creditors of equal rank with equal rights within chapter 11, in the absence of a purpose independent of the debtor's desire to gerrymander an impaired assenting class, they should be classified together.

■ That GECC's secured claim may drive the manner in which it casts its unsecured deficiency claim (and thus cause it to cast its unsecured vote in a manner that has nothing to do with its best interest as an unsecured creditor) is no reason to separately classify GECC's deficiency claim. Such a rationale improperly focuses on the motives and agenda of the claim holder rather than on the nature of the underlying claim. 5 L. King, *Collier on*

*Bankruptcy* ¶ 1122.03[1]–[b] (15th ed. 1992) ("The focus on a particular claim should not be on the claim holder but rather on the legal nature of the claim."). Creditors in bankruptcy frequently cast votes motivated by concerns other than the anticipated distribution under the plan. Just by way of example, a creditor seeking to take over the debtor's business may vote his claim against what most creditors would consider to be a very reasonable plan. A trade creditor whose own business is largely dependent upon the debtor's survival may vote in favor of the plan notwithstanding a paltry distribution. And a creditor who acquired his claim postpetition at a discount from face value may be motivated to vote against a plan solely because the spread on what the claim cost him and what distribution he is receiving on it is perceived to be too small. In short, there is nothing in the Bankruptcy Code which renders a creditor a fiduciary in the voting of his claim; he is free to vote his self-interest.[10] *See Young v. Higbee Co.*, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945); *In re Marin Tower Center*, 142 B.R. 374, 378–79 (N.D.Cal.1992); *Matter of Featherworks Corp.*, 36 B.R. 460, 463 (E.D.N.Y. 1984).

The debtor further argues that based on policy concerns, namely, the reorganization policy of chapter 11, the debtor ought be permitted to classify GECC's deficiency claim separately. Specifically, debtor's counsel suggests that, in cases like these, if all unsecured claims are classified together, the enormous deficiency claim of the undersecured lender would dominate the vote and since the chances of finding another assenting impaired class would be virtually impossible, would effectively preclude access to cramdown. In essence, the debtor argues, that creditor would have a veto power over the debtor's ability to confirm a plan. In many cases, the result which the debtor predicts would certainly occur. But where the deficiency claim is small or where the deficiency claim is not so small but there are junior mortgagees with claims of a sufficient magnitude, a cramdown would still be possible.

To permit separate classification and, thereby, possible cramdown, is not harmful to the undersecured creditor, according to the debtor, because the creditor is getting that to which section 506(a) of the Code entitles him, a secured claim and an unsecured claim. But the creditor is harmed by his effective disenfranchisement. As one court recently put the matter:

> Section 1129(a)(10) operates as a statutory gatekeeper barring access to cramdown where there is absent even one impaired class accepting the plan. Cramdown is a powerful remedy available to plan proponents under which dissenting classes are compelled to rely on difficult judicial valuations, judgments, and determinations. The policy underlying Section 1129(a)(10) is that before embarking upon the tortuous path of cramdown and compelling the target of cramdown to shoulder the risks of error necessarily associated with a forced confirmation, there must be some other properly classified group that is also hurt and nonetheless favors the plan.

*In re 266 Washington Associates*, 141 B.R. at 287. The Supreme Court, writing on the new value exception in *Norwest Bank Worthington v. Ahlers*, discussed the equitable powers argument and concluded that:

> ... whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code ... The Code provides that it is up to creditors—and not the courts—to accept or reject a reorganization plan which fails to provide them with adequate protection or fails to honor the absolute priority rule ...

The Court of Appeals may well have believed that petitioners or other unsecured creditors would be better off if respondents' reorganization plan was confirmed. But that determination is for the creditors to make in the manner specified by the Code. 11 U.S.C. § 1126(c).

---

10. Under very limited circumstances, such as where the creditor is receiving some special treatment to cause a particular vote, a vote may be disqualified. *See* 5 L. King, *Collier on Bankruptcy*, ¶ 1126.05[2] (15th ed. 1992); 11 U.S.C. § 1126(e).

Here, the principal creditors entitled to vote in the class of unsecured creditors (i.e., petitioners) objected to the proposed reorganization. This was their prerogative under the Code, and the courts applying the Code must effectuate their decision.

485 U.S. 197, 206–07, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).

█ Congress enacted section 1111(b) to give nonrecourse debt a voice in the chapter 11 process. 5 L. King, *Collier on Bankruptcy* ¶ 1111.02[1] at 1111–14–15 (15th ed. 1992). The purpose of the section 1111(b) election is to allow the undersecured creditor a right to potentially dominate the vote within the unsecured class; the larger the nonrecourse claim, the larger that claimant's voice sounds. *In re Meadow Glen, Ltd.,* 87 B.R. at 426–27. Courts have recognized that granting one voting power commensurate with the amount of one's claim gives effect to the statutory meaning of sections 506(a) and 1111(b). *In re 266 Washington Associates,* 147 B.R. 827, 832; *In re Pine Lake Village Apt. Co.,* 19 B.R. 819, 831 (Bankr.S.D.N.Y. 1982). Giving GECC that dominant veto right under these circumstances comports with the democratic voting power that the Code gives the majority of any class of claims. 11 U.S.C. § 1126(c), (d).

█ As I stated at the Rule 3013 hearing, if GECC's unsecured deficiency claim were lower and the recourse unsecured debt and/or Conflate's unsecured claims were higher, a cramdown plan would have been more realistic. That this debtor's cramdown plan may not succeed on the facts before me does not disprove the utility of the cramdown provision. *In re Greystone III Joint Venture,* 948 F.2d at 140. It merely means that in this case, the gates to cramdown have been closed. Given the makeup of this debtor's creditor body, I cannot envision any plan of reorganization which could be confirmed absent GECC's affirmative vote. Accordingly, I conclude that this property is not necessary for an effective reorganization that is in prospect. Since the debtor concedes that it lacks equity in the property, the conclusion is inescapable that relief from the automatic stay is appropriate under section 362(d)(2).

SETTLE ORDER CONSISTENT WITH THIS OPINION.