**In re D & W REALTY CORPORATION.**

**No. 93 Civ. 6161 (JSM).**

United States District Court,
S.D. New York.

Feb. 22, 1994.

Davidoff & Malito, Stuart Perlmutter and Rachel Warren, New York City, for Barclays Business Credit, Inc.

Hertzog, Calamari & Gleason, Steven Schwartz, New York City, for Federal Home Loan Mortg. Corp.

Backenroth & Grossman, Mark Frankel, New York City, for D & W Realty Corp.

## OPINION

MARTIN, District Judge:

This is an appeal from a decision approving the disclosure statement filed by the bankrupt, D & W Realty Corporation ("D & W" or the "Debtor"), in which D & W classified the unsecured portion of its debt to the appellant-secured creditor Barclay's Business Credit Corp., 156 B.R. 140. ("Barclay's") separately from its debts to other unsecured creditors. Appellant contends that the sole reason for this separate classification is to manipulate the voting with respect to the Debtor's plan of reorganization (the "Plan") and guarantee that at least one impaired class of creditors will vote to approve the Plan.

## DISCUSSION

This is a single asset real estate bankruptcy case. The Debtor's sole business is owning and operating an office building in Wilkes–Barre, Pennsylvania (the "Property"). The Property has a present value of $3.1 million, and is encumbered by a first mortgage held by Barclay's in the amount of approximately $5.6 million. Thus, pursuant to 11 U.S.C. § 506(a), Barclay's has a secured claim in the amount of $3.1 million, and an unsecured deficiency claim in the amount of approximately $2.5 million. All other unsecured claims total approximately $1,295,-000. Thus, Barclay's unsecured claim is substantially greater in amount than the total value of all of the other unsecured claims taken together, and, if classified together

with those claims, would dominate in the voting of that class of claims.

■ Classification is governed primarily by 11 U.S.C. § 1122, which, read closely, requires only that claims that are classified together must be substantially similar. It does not actually require that all substantially similar claims be placed in the same class. However, the case law makes clear that substantially similar claims may not be placed in separate classes for the sole purpose of affecting or "gerrymandering" the voting with respect to the debtor's proposed plan of reorganization under § 1129(a) of the Bankruptcy Code. *See In re John Hancock Mutual Life Ins. Co.,* 987 F.2d 154, 158 (3rd Cir. 1993); *In re Greystone III Joint Venture,* 995 F.2d 1274, 1278–79 (5th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re One Times Square Associates Limited Partnership,* 159 B.R. 695, 703 (Bankr.S.D.N.Y.1993). In other words, separate classification must not offend due process and fair play. *In re One Times Square* at 703. Thus, separate classification must be justified by a legitimate business reason or some legitimate difference in the treatment of creditors that are classified separately under a debtor's plan of reorganization. *In re John Hancock,* 987 F.2d at 159–60; *In re Bryson Properties, XVIII,* 961 F.2d 496, 502 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *In re Lumber Exchange Bldg. Ltd. Partnership,* 968 F.2d 647, 649–50 (8th Cir.1992). Otherwise, "if claims could be arbitrarily placed in separate classes, it would almost always be possible for the Debtor to manipulate 'acceptance' by artful classification." *In re Greystone,* 995 F.2d at 1277.

■ Here, no business reason or other Code-based difference has been proffered in support of separate classification of Barclay's deficiency claim. In fact, the Plan contemplates giving exactly the same treatment to the deficiency claim and the class of other unsecured claims. Nevertheless, in this case, the Bankruptcy Court held not only that Barclay's deficiency claim *could* be classified separately from the other unsecured claims, but went further and held that it *could not* be classified together with the other unse-

cured claims. Decision at 2. The Court supported this holding by reasoning that since § 1111(b)(2) permits the inadequately secured creditor to elect as to whether its deficiency claim will be treated as fully secured rather than as an unsecured claim pursuant to § 506(a), the deficiency portion could not be placed in a class of unsecured claims, the other members of which have no right to make such an election and should have no vote as to whether the inadequately secured creditor will exercise its § 1111(b)(2) election to opt out of § 506(a). Decision at 9. This reasoning, however, is flawed in several respects.

First, the § 1111(b) right of election does not belong to the *unsecured* portion of the secured creditor's claim or to the class of unsecured creditors of which the deficiency claim would be a member, absent either exercise of the election or separate classification. It belongs instead to the *secured* portion of the claim, and to the class of which the secured portion of Barclay's claim is a member. On its face, section 1111(b)(1)(A) of the Bankruptcy Code clearly refers to "[a] claim secured by a lien on property of the estate". Since, by definition, the deficiency claim is not secured by a lien, § 1111(b) presumably is not concerned with the rights of that portion of the secured creditor's claims. Furthermore, § 1111(b)(1)(B)(i) provides that "[a] class of claims may not [exercise the 1111(b)(2) election] if the interest on account of such claims in such property is of inconsequential value." The "interest . . . in . . . property" of an unsecured deficiency claim, being nonexistent, obviously is of "inconsequential value". *See In re 500 Fifth Ave. Associates,* 148 B.R. 1010, 1016 (Bankr. S.D.N.Y.), *aff'd,* 1993 WL 316183 (LJF) (S.D.N.Y. May 21, 1993) (If a lien has no value, the holder of that claim cannot make the § 1111(b) election); 5 *Collier on Bankruptcy,* ¶ 1111.02 (1992). Thus, it is only the secured claim and the class of which it is a member that may exercise the 1111(b) election, and the problem of improper interference with the election posited by the Bankruptcy Court in its Decision simply does not exist.

■ Furthermore, the Court below stated that it "[found] no reason why the mortgagee's secured and unsecured claims cannot and should not be treated together in a single class." Decision at 12. This clearly is incorrect, unless Barclay's elects to treat its entire claim as secured pursuant to § 1111(b)(2). Section 1122(a) states that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Manifestly, a secured claim and an unsecured claim, even those of the same creditor, are about as dissimilar as two claims can be. Since Barclay's has stated that it does not intend to exercise its right under § 1111(b)(2) to have its entire claim treated as secured, Decision at 3, its two claims clearly cannot be grouped together in one class of dissimilar claims.

In addition to the foregoing problems with the Bankruptcy Court's decision, a rule that *requires* the unsecured deficiency claim of an inadequately secured creditor to be classified separately from the other unsecured claims against the debtor would render the § 1111(b)(2) election meaningless in most single asset real estate bankruptcy cases. As the Fifth Circuit stated in *In re Greystone,*

> The purpose of § 1111(b) is to provide an undersecured creditor an election with respect to the treatment of its deficiency claim. Generally, the creditor may elect recourse status and obtain the right to vote in the unsecured class, or it may elect to forego recourse to gain an allowed secured claim for the entire amount of the debt. If separate classification of unsecured deficiency claims arising from nonrecourse debt were permitted solely on the ground that the claim is non-recourse under state law, the right to vote in the unsecured class would be meaningless. Plan proponents could effectively disenfranchise the holders of such claims by placing them in a separate class and confirming the plan over their objection by cramdown. With its unsecured voting rights effectively eliminated, the electing creditor's ability to negotiate a satisfactory settlement of either its secured or unsecured claims would be seriously undercut.

> It seems likely that the creditor would have to 'elect' to take an allowed secured claim under § 1111(b)(2) in the hope that the value of the collateral would increase after the case is closed. Thus, the election under § 1111(b) would be essentially meaningless. We believe Congress did not intend this result.

995 F.2d at 1280. Thus, a requirement that an unsecured deficiency be classified separately from the other unsecured claims would effectively withdraw one option given by the Code to the inadequately secured creditor, who would reap no advantage by opting *not* to elect fully secured status pursuant to § 1111(b).

Finally, if a debtor could classify unsecured claims in any fashion that it pleased, irrespective of their treatment under its Plan of reorganization, there would be no need for the administrative convenience provision of § 1122(b). Such a result, therefore, would run afoul of the maxim that, if possible, a statute is to be interpreted so as to give meaning to all of its parts. *In re Greystone,* 995 F.2d at 1278–79.

While it is true that classification of an unsecured deficiency claim together with the other unsecured claims against the debtor will permit the inadequately secured creditor to dominate the voting of the sole unsecured class in most single asset real estate bankruptcy cases, a rule that routinely permits, let alone requires, separate classification would give unsecured creditors who hold a very small proportion of the unsecured debt the ability to control the voting process and "cram down" a plan over the objection of a creditor who has a much greater interest in the assets of the debtor. To give a small group of unsecured creditors voting power that is so disproportionate to their interest in the bankruptcy estate does not comply with the § 1129(b)(1) requirement that a Plan does not discriminate unfairly and is fair and equitable. *See In re John Hancock,* 987 F.2d at 158. Such a result also undermines the democratic process that is intrinsic to Chapter 11. *Id.* at 159; *In re 500 Fifth Ave. Associates,* 148 B.R. at 1020. Moreover, such a rule would allow virtually any owner

**130**

of a single property that is encumbered by debt that exceeds the property's present value to unilaterally take from the secured creditor the right to foreclose simply by filing a petition in bankruptcy under Chapter 11. Foreclosure is a legal right for which the secured creditor bargained when it lent the debtor money and took a lien on the Property. There is no indication that Congress intended that Chapter 11 generally, and classification in particular, should be used routinely to achieve such a result.

### CONCLUSION

The Order of the Bankruptcy Court approving D & W's disclosure statement is reversed. This Court holds that separate classification of unsecured deficiency claims and other unsecured claims is not required. Such separate classification may be permitted only for legitimate business or Code-based reasons. Here no such reasons have been preferred. Thus, the disclosure statement violates the basic rule that separate classification is impermissible if motivated solely by an attempt to create an impaired class of creditors that will assent to confirmation of the Plan. This matter is remanded to the Bankruptcy Court for further proceedings in light of this decision.