In re ONE TIMES SQUARE AS-
SOCIATES LIMITED PART-
NERSHIP, Debtor.

ONE TIMES SQUARE ASSOCIATES
LIMITED PARTNERSHIP,
Appellant,

v.

BANQUE NATIONALE DE
PARIS, Appellee.

Nos. 93 Civ. 8476 (MGC),
93 Civ. 8477 (MGC).

United States District Court,
S.D. New York.

March 31, 1994.

Shaw, Licitra, Parente, Esernio & Schwartz, P.C. by J. Stanley Shaw, Craig A. Damast, Garden City, NY, for appellant.

LeBoeuf, Lamb, Creene & MacRae by John S. Kinzey, John P. Campo, Timothy W. Walsh, New York City, for appellee.

OPINION

CEDARBAUM, District Judge.

One Times Square ("OTS" or the "Debtor"), a limited partnership, appeals from an order entered by the bankruptcy court on November 1, 1993, granting the motion of the

largest creditor, Banque Nationale de Paris ("BNP"), to lift the automatic stay. The Debtor also appeals from an order entered on November 17, 1993, in which the bankruptcy court granted reconsideration of, and adhered to, its November 1 order. BNP had already obtained a judgment of foreclosure against the Debtor's only asset, the building and real property at One Times Square. It moved to lift the automatic stay so that it could proceed with a foreclosure sale. The bankruptcy court's decision to lift the automatic stay was based on its finding that the proposed plan of reorganization (the "Plan") could not be confirmed. The Debtor challenges each of the three grounds on which the bankruptcy court's rejection of confirmation was based.

For the reasons discussed below, the bankruptcy court did not abuse its discretion in granting BNP's motion to lift the automatic stay. Therefore, the orders appealed from are affirmed.

### Background

The Debtor's only asset is the building and real property at One Times Square. BNP has a security interest in all rents, profits, proceeds and contractual rights arising out of this property pursuant to a mortgage agreement executed on March 14, 1989. On October 17, 1991, after OTS defaulted on its loan, BNP instituted foreclosure proceedings against the property in New York State Supreme Court. On March 11, 1992, the Debtor filed a voluntary Chapter 11 petition. At that time, the property was valued at $19 million and was encumbered by BNP's mortgage in the amount of approximately $30 million. On July 17, 1992, the Debtor and BNP agreed to modify the automatic stay to allow BNP to continue its foreclosure proceedings to entry of judgment, and then to return to the bankruptcy court for permission to proceed with a foreclosure sale. A judgment of foreclosure was entered against the property on April 8, 1993.

In the Chapter 11 proceedings, BNP did not elect to have its entire claim treated as secured pursuant to 11 U.S.C. § 1111(b)(2), but filed a secured claim of $19 million, and an unsecured deficiency claim of approximately $11 million. The Debtor's only other significant creditors are Van Wagner Communications, Inc. and Spectacolor, Inc., two sign management companies which had agreements (the "signage agreements") with OTS to lease advertising space on its exterior walls. Their claims are unsecured and arise out of the Debtor's rejection of their signage agreements which resulted in damages totalling approximately $3 million.

The Plan, which was ultimately rejected by the bankruptcy court, created three impaired voting classes: Class 4, which included BNP's $19 million secured claim; Class 5, which comprised the unsecured claims of Spectacolor and Van Wagner totalling $3 million; and Class 6, which comprised BNP's $11 million unsecured deficiency claim and approximately $200,000 in unsecured claims of small trade vendors. Classes 4 and 6 voted to reject the plan; Class 5 voted in its favor. The Debtor sought confirmation of the Plan under the cramdown provisions of § 1129(b).

After a ten-day hearing, Judge Blackshear denied confirmation of the Plan on three separate grounds. First, the court found that the motive behind the Debtor's decision to create a separate class for the unsecured claims of Van Wagner and Spectacolor was to guarantee that at least one impaired class would vote to approve the Plan. The court found that this "gerrymandering" was impermissible under §§ 1122(a) & 1129(a)(1) of the Code. Second, the court found that the Plan was not "fair and equitable" to Class 4, as required under § 1129(b)(2)(A)(i)(II), because the proposed interest rate was inadequate. Third, the court found that the Plan violated the absolute priority rule of § 1129(b)(2)(B)(ii) because the "new value" to be contributed by the limited partners was insufficient in relation to the interest they would retain under the Plan. The Debtor challenges each of these conclusions. The bankruptcy court's finding that the Plan is feasible has not been challenged by either party.

### Discussion

#### A. Standard of Review

█ The bankruptcy court's "findings of fact, whether based on oral or documentary

evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R.Bankr.P. 8013 (1994). Conclusions of law shall be reviewed de novo. *Chase Manhattan Bank v. Third Eighty–Ninth Associates (In re Third Eighty–Ninth Associates),* 138 B.R. 144, 146 (S.D.N.Y.1992). The bankruptcy court's decision to grant relief from the automatic stay may be overturned only upon a finding that the bankruptcy court abused its discretion. *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),* 907 F.2d 1280, 1286 (2d Cir.1990).

### B.  *Standard for Lifting the Automatic Stay*

■  Section 362(d)(2) provides that a creditor is entitled to relief from the automatic stay with respect to certain property if the Debtor has no equity in that property and the property "is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). In light of BNP's secured claim of approximately $30 million against property now valued at only $19 million, the Debtor has acknowledged that it has no equity in the property.

The second element, that is, whether the property is "necessary to an effective reorganization," is hotly disputed. Although the property in question here is the Debtor's only asset, it is not automatically deemed necessary to an effective reorganization. The Supreme Court has interpreted this provision to require:

> [N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means ... that there must be a reasonable possibility of a successful reorganization within a reasonable period of time.

*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988) (citations omitted); *see In re 500 Fifth Avenue Associates,* 148 B.R. 1010, 1015–16 (Bankr.S.D.N.Y.), *aff'd,* 1993 WL 316183 (S.D.N.Y.1993).

A successful reorganization can be accomplished in one of two ways. A plan for reorganization may be agreed upon by all impaired classes, pursuant to § 1129(a)(8), or it may be approved through the use of the cramdown provisions of § 1129(b) to confirm a plan over the objections of dissenting classes. The Debtor and BNP were unable to agree upon an acceptable plan for reorganization over the course of twenty months. Therefore, the Debtor's only reasonable chance for a successful reorganization would be through the use of the cramdown provisions to confirm the Plan over BNP's objections. If the bankruptcy court was correct in determining that a cramdown is not feasible, then the property is not necessary to an effective reorganization and the court was within its discretion to lift the stay. *In re 500 Fifth Avenue,* 148 B.R. at 1015–16, 1021; *In re 266 Washington Associates,* 141 B.R. 275, 287 (Bankr.E.D.N.Y.), *aff'd,* 147 B.R. 827 (E.D.N.Y.1992).

### C.  *Classification*

■  The bankruptcy court's conclusion that the Plan could not be confirmed under the cramdown provisions rested primarily on its finding that the Debtor's proposed classification scheme was an impermissible attempt to manipulate the vote. The Debtor challenges both the court's legal conclusion that gerrymandering is impermissible under the Code and its factual finding that the Debtor's motive in separately classifying the claims of Van Wagner and Spectacolor was to gerrymander to achieve an affirmative vote.

According to the cramdown provisions of the Code, only one assenting class of impaired claims is needed to confirm a plan over the dissent of the other classes. 11 U.S.C. §§ 1129(a)(10), 1129(b). For a class of claims to accept a plan, more than one-half in number and at least two-thirds in amount of claims must vote in favor of the plan. 11 U.S.C. § 1126(c). The decision to put certain claims in separate classes can thus affect the outcome of the vote.

For example, had the Debtor placed all unsecured claims in a single class, BNP could have dominated the voting since its $11 million unsecured claim comprises more than

two-thirds of the total amount of the unsecured claims against the Debtor. The central dispute here arose when the Debtor chose to place the $3 million unsecured claims of Van Wagner and Spectacolor in a different class from the $11 million unsecured claim of BNP, thereby giving Van Wagner and Spectacolor the ability to vote separately from BNP.

Section 1122(a) governs the Debtor's classification of claims. On its face, this section requires only that the claims in a particular class be "substantially similar," and not that all substantially similar claims be placed in one class. 11 U.S.C. § 1122(a). However, courts have held that while a debtor has a certain degree of flexibility in classifying claims, its discretion is limited by the principle that classification may not be used for the sole purpose of manipulating the vote. The court in *In re 266 Washington Associates* stated:

> '[T]here must be some limit on a debtor's power to classify creditors in such a manner [to assure that at least one class of impaired creditors will vote for the plan and make it eligible for cramdown consideration by the court]. The potential for abuse would be significant otherwise. Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class.'

141 B.R. at 283 (quoting *Teamsters National Freight Industry Negotiating Committee v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.)*, 800 F.2d 581, 586 (6th Cir.1986)); *see John Hancock Mutual Life Insurance Co. v. Route 37 Business Park Associates*, 987 F.2d 154, 158 (3d Cir.1993); *Phoenix Mutual Life Insurance Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1277 (5th Cir.1991), *cert. denied*, ___ U.S. ___, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992) ("Classification of claims ... affects the integrity of the voting process, for, if claims could be arbitrarily placed in separate classes, it would almost always be possible for the debtor to manipulate 'acceptance' by artful classification.")

Courts have thus imposed on debtors the requirement that substantially similar claims be classified together unless there exists some reason, other than gerrymandering, for separating them. *See In re Greystone III Joint Venture*, 995 F.2d at 1279; *In re 266 Washington Associates*, 141 B.R. at 283. The bankruptcy court followed this general rule and found that the classification scheme proposed by the Debtor was impermissible because there was no legitimate reason for separately classifying the unsecured claims of Van Wagner and Spectacolor from the other unsecured claims.

The Debtor argues that § 1122(a) does not prohibit gerrymandering and that policy considerations support its right to classify claims to promote its efforts to reorganize. Otherwise, the Debtor argues, the large size of BNP's unsecured deficiency claim would effectively give BNP the power unilaterally to veto any plan for reorganization that the Debtor might propose. The Debtor relies on three cases for the proposition that gerrymandering is permitted under the Code: *In re D & W Realty Corp.*, 156 B.R. 140 (Bankr. S.D.N.Y.1993); *In re SM 104, Ltd.*, 160 B.R. 202 (Bankr.S.D.Fla.1993); and *In re ZRM–Oklahoma Partnership*, 156 B.R. 67 (Bankr. W.D.Okla.1993). The *D & W Realty* court stated that the Code not only permits the separate classification of a secured creditor's unsecured deficiency claim but requires it. 156 B.R. at 141. This decision has recently been reversed. *See In re D & W Realty Corp.*, 165 B.R. 127 (S.D.N.Y.1994).

Although reorganization efforts should be encouraged, the Code does not give debtors an absolute right to a cramdown. Section 1129(a)(10) requires that at least one impaired class of claims accept a plan before the other classes can be forced to accept it. As the *In re 266 Washington Associates* court stated:

> Section 1129(a)(10) operates as a statutory gatekeeper barring access to cramdown where there is absent even one impaired class accepting the plan. Cramdown is a powerful remedy available to plan proponents under which dissenting classes are compelled to rely on difficult judicial valuations, judgments, and determinations. The

policy underlying Section 1129(a)(10) is that before embarking upon the tortuous path of cramdown and compelling the target of cramdown to shoulder the risks of error necessarily associated with a forced confirmation, there must be some other properly classified group that is also hurt and nonetheless favors the plan.

141 B.R. at 287. Allowing a debtor to manipulate the voting by creating a class that is certain to favor a plan effectively nullifies the threshold requirement that at least one impaired class accept the plan.

The fact that the size of BNP's claim gives it the power to "veto" the Plan does not mean that the Debtor's hopes for reorganization have been unfairly denied. The Code's voting requirements recognize that those creditors with larger claims deserve a greater voice in deciding whether or not a debtor's plan for reorganization is acceptable. BNP, by deciding not to make a § 1111(b)(2) election, chose to have an $11 million unsecured deficiency claim—and, with this claim, a powerful voice among the unsecured creditors. *See In re 500 Fifth Avenue Associates,* 148 B.R. at 1021 ("The purpose of the section 1111(b) election is to allow the undersecured creditor a right to potentially dominate the vote within the unsecured class; the larger the nonrecourse claim, the larger that claimant's voice sounds."); *In re 266 Washington Associates,* 141 B.R. at 285; *In re Greystone III Joint Venture,* 995 F.2d at 1280. The Debtor may not avoid this result by placing smaller unsecured claims in a separate class to diminish the effect of BNP's vote.

The Debtor also challenges the bankruptcy court's factual determination that its motive in separately classifying the claims of Van Wagner and Spectacolor was, in fact, to gerrymander rather than to further other legitimate ends. The bankruptcy court, after listening to ten days of testimony and reviewing the relevant documents, found that the Debtor rejected the signage agreements of Van Wagner and Spectacolor "solely to create a separate, non-insider, impaired class guaranteed to accept the Plan." *In re One Times Square Associates Limited Partnership,* 159 B.R. 695, 705 (Bankr.S.D.N.Y.1993). The court relied primarily on the testimony of Arthur Nevid, property manager for the Debtor, who testified that the Plan separately classified the claims of Van Wagner and Spectacolor because "we were advised by counsel that we were able to reject those contracts, rejecting those contracts would create them as creditors and that would enhance—that would enable us to have a plan that would be confirmable." (Record, Vol. III, at 1486–87.)

The Debtor asserts that it did not reject the signage agreements and thereby create the unsecured claims of Van Wagner and Spectacolor for the purpose of establishing an impaired class to affirm the Plan. The Debtor also argues that it had valid reasons for the separate classification which the bankruptcy court "either failed to consider or appreciate." (Debtor's Mem. at 40.) It is unnecessary to decide whether the Debtor had improper reasons for creating the unsecured claims of Van Wagner and Spectacolor. Although it would not have been possible for the Debtor to gerrymander in this case without first rejecting the signage agreements, the critical issue is whether the Debtor's motive in putting the claims of Van Wagner and Spectacolor in a separate class was to gerrymander.

■ With respect to its effort to justify the separate classification of the claims of Van Wagner and Spectacolor, the Debtor first argues that Van Wagner and Spectacolor have a unique interest in OTS. *See In re U.S. Truck Co., Inc.,* 800 F.2d 581 (6th Cir. 1986). According to the Debtor, the claims of Van Wagner and Spectacolor are unique because the signage agreements provide over one-half of OTS' income and because their interests will be extinguished if BNP is allowed to proceed with foreclosure.

However, "[s]uch a rationale improperly focuses on the motives and agenda of the claim holder rather than on the nature of the underlying claim." *In re 500 Fifth Avenue,* 148 B.R. at 1019. The general rule is that "unsecured creditors hold substantially similar claims; they are claimants of equal legal rank entitled to share pro rata in values remaining after payment of secured and priority claims." *In re 266 Washington Associates,* 141 B.R. at 282 (quoting *In re Pine*

*Lake Village Apartment Co.,* 19 B.R. 819, 830 (Bankr.S.D.N.Y.1982); *see In re 500 Fifth Avenue,* 148 B.R. at 1019. The Debtor argues that the claims of Van Wagner and Spectacolor are distinct from the claim of BNP because BNP has an interest in foreclosing on the property, whereas Van Wagner and Spectacolor have an interest in continuing to do business with the Debtor. While these divergent interests may create different incentives in voting, they cannot serve as a justification for separate classification.

Second, the Debtor argues that good business reasons justify separate classification. The Debtor relies on *Heartland Federal Savings & Loan Association v. Briscoe Enterprises, Ltd. (In re Briscoe Enterprises, Ltd.),* 994 F.2d 1160 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993), in which the court authorized separate classification for a city's claim because it found that the debtor's relationship with the city, which provided rental assistance to many of the people who lived in the debtor's apartments, was "essential" to the continued business of the debtor. 994 F.2d at 1167. The court was careful to "emphasize the narrowness of this holding." *Id.* The Debtor argues that it shares with Van Wagner and Spectacolor an interest in maintaining business relations. However, it has not been suggested that Van Wagner and Spectacolor are essential to OTS' ongoing business. In fact, the transcript of the confirmation hearing reveals that there are other signage companies which might be interested in doing business with the Debtor. (Record, Vol. III, at 1349–50; 1489–91.) As stated above, the mere fact that Van Wagner and Spectacolor would like to continue to do business with the Debtor cannot serve as a justification for separate classification.

■ Finally, the Debtor relies on *In re Atlanta West VI,* 91 B.R. 620 (Bankr.N.D.Ga. 1988), for the proposition that Van Wagner's commitment to contribute $720,000 to the Debtor to facilitate the implementation of the Plan justifies its separate classification. However, the *Atlanta West* court, in approving the separate classification of, and more favorable treatment to, an unsecured creditor who agreed to advance a new loan to the debtor, cautioned that a debtor's motives must be scrutinized to prevent the possibility of vote manipulation. 91 B.R. at 626. The fact that Van Wagner, in exchange for its $720,000 contribution, was to receive *less* favorable treatment under the Plan than the unsecured creditors in Class 6, does not support the Debtor's contention that Van Wagner's contribution was the reason for its separate classification.

*Conclusion*

The bankruptcy court's factual findings that the classification of unsecured claims was for the purpose of gerrymandering and that without gerrymandering a cramdown is not feasible were not clearly erroneous. The bankruptcy court's legal conclusion that gerrymandering is impermissible is affirmed. Since a cramdown is not feasible, the Debtor's property is not necessary to an effective reorganization and the bankruptcy court's decision to lift the automatic stay was not an abuse of discretion.

In view of my affirmance of the bankruptcy court's finding that a cramdown is not feasible, it is unnecessary to reach the bankruptcy court's alternative findings with respect to the fair and equitable standard and the new value exception. The Debtor's contention that the bankruptcy court failed to make specific findings of fact and conclusions of law relates only to these findings and is therefore not considered.

Finally, there is no merit in the Debtor's argument that the bankruptcy court improperly adhered to the November 1 order and erred in failing to hold hearings on a new plan proposed in its motion for reconsideration. The Debtor's only realistic route to a successful reorganization would be through a cramdown. But the Debtor needs the impermissible classification scheme to effect a cramdown. Thus, no plan proposed by the Debtor would be feasible, and the bankruptcy court was correct in adhering to its original order to deny confirmation and to lift the automatic stay.

For the foregoing reasons, the bankruptcy court's orders of November 1, 1993 and November 17, 1993 are affirmed.

SO ORDERED.