## In re D & W REALTY CORPORATION, Debtor.

### Bankruptcy No. 92–B–42542 (PBA).

United States Bankruptcy Court, S.D. New York.

July 14, 1993.

As Changed July 20, 1993.

Backenroth & Grossman by Mark A. Frankel, New York City, for debtor.

Davidoff & Malito by Stuart Perlmutter, Rachel Warren (on brief), New York City, for Barclays Business Credit, Inc.

## MEMORANDUM DECISION APPROVING SEPARATE CLASSIFICATION OF MORTGAGE CREDITOR, APPROVING DISCLOSURE STATEMENT AND FIXING HEARING ON CONFIRMATION

PRUDENCE B. ABRAM, Bankruptcy Judge.

This is a single-asset real estate case in which the debtor has proposed a plan and sought approval of a disclosure statement. The plan separately classifies the unsecured portion of the non-recourse mortgagee's claim from other unsecured claims. The court issues this decision to explain its approval of the disclosure statement over the mortgagee's objection that the plan improperly classifies creditors.

Classification in single asset real estate cases is currently a "hot topic" among bankruptcy practitioners and the subject of a number of decisions[1] and law review articles.[2] Those courts which permit the separate classification of the undersecured mortgagee's unsecured claim from those of other unsecured creditors generally do so on the rationale that the Bankruptcy Code permits flexible classification. Those that do not call separate classification "gerrymandering". The Second Circuit has not yet spoken on the subject.

This court concludes that separate classification is not only appropriate, it is in fact mandated by the Bankruptcy Code and Rules. Separate classification ensures that the right of election provided in Bankruptcy Code § 1111(b) is available. Separate classification also gives the undersecured mortgagee the power to prevent confirmation under Code § 1129(a), although confir-

---

1. See, e.g., *In re 500 Fifth Avenue Associates,* 148 B.R. 1010 (Bankr.S.D.N.Y.1993), aff'd No. 93 Civ. 844 (May 21, 1993) (Freeh, U.S.D.J.), stay issued pending appeal to 2d Cir.; *Matter of Greystone III Joint Venture,* 948 F.2d 134 (5th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re Lumber Exchange Building Partnership (Debtor v. Mutual Life Insurance Co.),* 968 F.2d 647 (8th Cir.1992); and *In re Bjolmes Realty Trust,* 134 B.R. 1000 (Bankr.D.Mass.1991).

2. See, e.g., Rusch, *Single Asset Cases and Chapter 11: The Classification Quandary,* 1 A.B.I. Law Rev. 43 (Spring 1993).

mation under the so-called cram-down provisions of Code § 1129(b) may be possible. In short, separate classification enfranchises, rather than disenfranchises, the undersecured mortgagee.[3]

## Statement of Facts

1. The Debtor filed its Chapter 11 petition on May 6, 1992.

2. The Debtor's sole business is owning an office building in Wilkes–Barre, Pennsylvania (the "Property"). The Property is encumbered by a non-recourse first mortgage held by Barclay's Business Credit Corp. ("Barclay's"). The amount due on the mortgage is approximately $5.6 million.

3. The Debtor filed a plan dated May 20, 1993 that provides for 5 classes. *Class I* is the secured claim of Barclay's. Barclay's has asserted that the Property has a present value of $3.1 million, and the Debtor has adopted that valuation in the plan. *Class II* consists of priority claims. *Class III* is the unsecured claim of Barclay's, which is approximately $2.5 million. *Class IV* consists of all other allowed unsecured claims. These claims are estimated to total approximately $1,295,000. *Class V* are the Equity Interests in the Debtor.

4. Barclay's has stated that it will not elect treatment under Code § 1111(b).

## Discussion

■ This court has approached the problem of classification as a matter requiring a careful technical analysis of the Bankruptcy Code and Rules.[4] Since the court finds what it considers a statutory mandate for separate classification in the Bankruptcy Code, the court finds it unnecessary to approach the problem by adopting a philosophical position on the wisdom of separate classification in single asset real estate cases.[5] The furor over classification does suggest a mind-set that the debtor will be successful at confirming the case under the cram-down standards of Code § 1129(b) once the debtor is able to get at least one consenting class. However, unless the new value exception exists, a subject on which there has been extensive scholarly and case debate,[6] confirmation under Code § 1129(b) will be impossible in most single asset real estate cases.

Classification is a plan issue. Code § 1123 provides the details of the contents of a plan. Subsection (a) provides those provisions a plan must have; subsection (b) provides those provisions a plan may have. Subsection (a)(1) requires that the plan designate, subject to Code § 1122, classes of claims, other than claims of a kind specified in Code §§ 507(a)(1), 507(a)(2) or 507(a)(7). Subsection (a)(3) requires that the plan specify the treatment of any class of claims

---

**3.** This court thus wades into the fray as the standard-bearer for a rationale that it has not found articulated anywhere else. The discovery of apparently novel theories in areas that are well-trodden ground is always a treacherous business. Compare this court's rationale in *In re Sider Ventures & Services Corp.*, 33 B.R. 708 (Bankr.S.D.N.Y.1983), *aff'd*, 47 B.R. 406 (S.D.N.Y.1985) with the subsequent decision of the United States Supreme Court in *Barnhill v. Johnson*, —— U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

**4.** The United States Supreme Court has reminded the bankruptcy courts on a number of occasions recently to pay careful attention to the statute itself in order to effectuate the legislative intent. *See, U.S. v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (Courts must construe the entirety of a section of the Bankruptcy Code so that every word has some operative effect); and *Connecticut National Bank v. Germaine,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (Courts

must presume that a legislature says in a statute what it means and means in a statute what it says).

**5.** Professor Rusch, for example, argues in her article, *supra* at 64, that

"Under the current Code structure, successful use of the classification argument would negate the negotiation value and subordinate the debtor's owners' second chance value to the unrestricted whims of the undersecured creditor. Unless a societal consensus is reached determining that these two values should not be promoted in single asset cases, the classification argument should be resolved in favor of the debtor to allow classification to create one accepting class of impaired claims."

**6.** See, e.g., MacDonald, Schreiber and MacDonald, Jr., *Confirmation by Cramdown Through the New Value Exception in Single Asset Cases*, 1 ABI Law Rev. 65 (Spring 1993) and cases cited therein.

that is impaired under the plan. Subsection (a)(4) requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim.

Bankruptcy Code § 1122 provides for the classification of claims and interests as follows:

"(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

"(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience."

It should be noted that Code § 1122(a) deals with the classification of both secured and unsecured claims. Subsection (b) applies only to unsecured claims.

This court had occasion to write on the subject of plan classification of unsecured claims ten years ago in a non-single asset real estate case. See *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106 (Bankr. S.D.N.Y.1983), *rev'd on other grounds*, 39 B.R. 654 (S.D.N.Y.1984). In *Mastercraft* the debtor separately classified disputed and undisputed claims in an attempt to obtain at least one consenting class to its plan because a large creditor with a disputed claim was known to oppose the plan. The debtor proposed the same treatment of both classes. This court held that Code § 1122(a) by necessary implication deals with the placing of similar claims in different classes. 32 B.R. at 108. This court found no authority for classifying similar claims differently other than Code § 1122(b).

"General unsecured claims are all alike, whether they are disputed or not, whether over or under $20,000. Thus, unless Bekins or Keel [, the holders of the disputed claims,] consents to a different and/or lesser treatment than that of other general unsecured creditors they may not be separately classified. Classification cannot be used to divide like claims into multiple classes in order to create a consenting class so as to permit confirmation." 32 B.R. at 108.

In recent years as single asset real estate cases became more numerous, the separate classification of the undersecured mortgage creditor's claim came to be viewed by many as a similar form of voting manipulation, or "gerrymandering".[7] *See, e.g., Greystone*, supra, 948 F.2d at 140 (Separate classification violates Code § 1122 by "gerrymandering the plan vote, for the sake of allegedly effectuating a § 1129(b) cramdown"). The use of the term gerrymandering in the bankruptcy context is not without its difficulties. Does the right to vote on a Chapter 11 plan mean the right to control the process? Or is it enough to be able to affect the process? Since it is impossible to effect a cramdown confirmation simply through obtaining the consent of a single class to the plan, the charge of gerrymandering against separate classification ignores the real power that comes from being able to preclude confirmation under Code § 1129(a).[8] Viewed in a different way, separate classification actually enfranchises.

Superficially, it would appear this court would have to preclude separate classification in order to remain consistent with its prior holding in *Mastercraft*. However, there are additional provisions of the Code

---

**7.** The term gerrymander has been defined as "a name given to the process of dividing a state or other territory into the authorized civil or political divisions, but with such a geographical arrangement as to accomplish a sinister or unlawful purpose". See *Black's Law Dictionary* (5th Ed.).

**8.** As the United States Supreme Court's recent 5–4 decision which involved a challenge to a North Carolina redistricting plan that created a new district that stretched approximately 160 miles along Interstate 85 and was comprised principally of black voters makes clear, the concept of "gerrymandering" is a nebulous one in part because of the difficulty of determining what is an improper purpose. See *Shaw v. Reno*, —— U.S. ——, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993).

to be considered because Barclay's, the mortgagee here, is a creditor whose claim is at least partially secured. Code § 506(a) provides that the claim of a creditor holding a security interest is divided into two parts: the claim is a secured claim to the extent of the value of the collateral and the balance is an unsecured claim.[9]

Code § 1111(b) adds an additional variation in a Chapter 11 case to this simple division of the claim into two parts based on the value of the collateral. Under Code § 1111(b)(1)(A) a claim secured by a lien on property of the estate is to be allowed or disallowed the same as if the holder of the claim had recourse against the debtor on account of the claim, whether or not the holder has recourse, unless "the *class* of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection" (emphasis added). Paragraph (2) provides that if the election is made then the claim is a secured claim to the extent the claim is allowed notwithstanding Code § 506(a). In the event the election is made, there is no unsecured claim.

█ The Code contemplates a class vote on the § 1111(b) election. The right of election belongs to the *class*, not to an individual claimant. If the right of election belongs to the class, then only persons who are entitled to make the election should be members of the class. Otherwise, the vote on the § 1111(b) election would be controlled by claimants not personally entitled to the election. Any secured creditor wishing to make the election would surely object to its election being defeated by the votes of claimants not personally entitled to make the election.

It could be argued that the class referred to under Code § 1111(b) is not intended to be coextensive with a class in the plan itself. However, since the right of election under Code § 1111(b) is meaningful only in the context of a plan, the court concludes that such a construction would be too strained to be warranted.

Bankruptcy Rule 3014 provides that an election of application of Code § 1111(b)(2) by a class of secured creditors may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such *later* time as the court may fix. Bankruptcy Rule 9006(c)(2) *precludes* the *reduction* of the time to take action under Bankruptcy Rule 3014.[10]

█ Bankruptcy Rule 3014 uses the phrase "a class of secured creditors" rather than the term secured claims. This court reads the phrase "secured creditor" to include the whole of the rights held by the secured creditor, which includes the right to both a secured and an unsecured claim in appropriate circumstances. The Advisory Committee Note to the rule states that "ordinarily each secured creditor is in a separate and distinct class. In that event, the secured creditor has the sole power to determine application of § 1111(b) with respect to that claim." Code § 1122 must be read *in pari materia* with Code § 1111(b) as well as Code § 1129(a)(7)(B).[11]

9. As the result of the steep fall in real estate values in recent years, the size of the mortgagee's unsecured claim is frequently larger than the aggregate of all other unsecured claims. If the mortgagee's unsecured claim is properly classified with the other unsecured claims, the mortgagee could dominate the unsecured class and could preclude the acceptance of the debtor's plan by that class. Thus, unless the debtor is able to obtain acceptance from another impaired class, the debtor cannot obtain confirmation of the plan under Code § 1129(a) or (b) since confirmation requires acceptance by at least one impaired class. See Code § 1129(a)(10). If the plan is not accepted by all impaired classes, but is accepted by at least one impaired class, the debtor can proceed to attempt a so-called cram-down confirmation under Code § 1129(b). See Code §§ 1129(a)(8) and (b)(1).

10. As the Advisory Committee Note indicates, the plan proponent, usually the debtor, will want to ascertain the position of the secured creditor class before a plan is proposed. The secured creditor class on the other hand must know the prospects of its treatment under the plan before it can intelligently determine its rights under Code § 1111(b).

11. This section requires in connection with confirmation that "if *section 1111(b)(2) of this title applies to the claims of such class,* each holder of a claim of such class will receive or retain

That a vote on the Code § 1111(b) election cannot be required before the plan and disclosure statement are filed supports the position that the plan must be drafted to permit the election to be made in the future. Likewise the disclosure statement needs to be drafted to discuss the ability of the secured creditor to make the election and what effect the election would have on the debtor's plan. In some cases the debtor may be prepared to proceed to confirmation if the election is made; in others the debtor will not. In that respect, the drafting of the disclosure statement would parallel the practice of disclosure with respect to whether the debtor will attempt to utilize the cram-down confirmation section, Code § 1129(b), if it does not obtain the affirmative vote of all classes.

In this court's view, those courts that have disapproved a debtor's plan on the grounds that it improperly classifies the mortgage creditor's claims are *sub silentio* determining either that the new value exception has failed to survive adoption of the Bankruptcy Code or, that if it did, the debtor's plan was insufficient under the exception. This debtor's plan may ultimately prove inadequate because it could be confirmed under Code § 1129(b) only if the "new value exception" exists. However, this court finds it unnecessary to opine on the "new value exception" in approving the disclosure statement. Only if the debtor is unable to obtain the affirmative vote of all classes and proceeds to attempt confirmation under Code § 1129(b) will it be necessary for the court consider that issue in this case. For the purpose of approving a disclosure statement, this court does not believe that it is required to nor should it dispose of all of the legal questions that may arise at the time of a confirmation hearing. It is only necessary for the court to ensure that the plan is not so structurally deficient that no possibility of confirmation exists whatever the outcome of voting. *Cf. United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)

(Automatic stay should be lifted if there is not a reasonable possibility of a successful reorganization within a reasonable time).

This court has proposed no now-you-see-it and now-you-don't standard with which to judge classification. Each mortgagee must be separately classified. This result is entirely consistent with the court's decision in *Mastercraft*. It is unnecessary to inquire into the debtor's subjective intent in classifying creditors.

This court finds no reason why the mortgagee's secured and unsecured claims cannot and should not be treated together in a single class. Here the Debtor chose to place Barclay's secured and unsecured claims into two different classes. Should the Code § 1111(b) election be made, the unsecured claim would disappear and leave that class without a member. On the facts of this case and since Barclay's has indicated that it will not make the Code § 1111(b) election, the court finds the separation to be a distinction without substance.

A separate order has been signed concurrently herewith approving the debtor's disclosure statement and fixing a hearing on confirmation.

under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims." (emphasis added).