**In re MOORPARK ADVENTURE, a limited partnership, Debtor.**

**CALIFORNIA FEDERAL BANK, F.S.B., Plaintiff,**

v.

**MOORPARK ADVENTURE, a limited partnership, Defendant.**

**Bankruptcy No. LA 93–16501 AG.**

**Motion No. 93–01656 AG.**

United States Bankruptcy Court, C.D. California.

Oct. 6, 1993.

Steven B. Lever, Clarkson & Lever, Torrance, CA, for debtor Moorpark Adventure.

Todd W. Mathers, Simon Aron, Manatt, Phelps & Phillips, Los Angeles, CA, for plaintiff, California Federal Bank, F.S.B.

### MEMORANDUM OF DECISION

ARTHUR M. GREENWALD, Bankruptcy Judge.

#### STATEMENT

The Debtor, Moorpark Adventure, a limited partnership (Moorpark), filed a voluntary

petition under Chapter 11 on February 25, 1993. In its filed schedules, it listed as its principal asset a twenty-nine unit apartment complex located in Sherman Oaks, California (Subject Property). Its only other listed assets were a checking account with a nominal cash balance and rental payments of $1,250.00.

The Debtor listed as its only secured creditor, California Federal Bank (Cal Fed). Also listed as unsecured priority claims were unpaid 1992 Los Angeles County property taxes in the amount of $11,800.00. Unsecured non-priority claims consisted of an accounting firm's claim of $2,801.90 and an unliquidated claim for additional property taxes.

Within the initial exclusivity period, the Debtor filed a proposed Plan of Reorganization along with a Disclosure Statement. Included in the Plan was Cal Fed's secured claim, admittedly undersecured in the amount of $350,000.00. Pursuant to 11 U.S.C. § 506(a),[1] the Plan classified as Class 2 the secured portion of Cal Fed's claim in the amount of $1,900,000.00. The unsecured portion in the amount of $350,000.00 was classified as Class 5. Other unsecured claims in the amount of $8,000.00 were classified in Class 3. In its filed Disclosure Statement, the Debtor stated that it would rely upon § 1129(b) in order to achieve plan confirmation.

Shortly before the filing of the Debtor's Plan and Disclosure Statement, Cal Fed filed a motion requesting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).[2] Opposition was filed by the Debtor. The matter came on for hearing before this court on September 9, 1993, as did the Debtor's motion requesting approval of its filed Disclosure Statement.

During these proceedings, the parties stipulated on the record that the Debtor had no equity in the Subject Property. Also, it was established that as of the hearing date, Cal Fed had not made the election provided for in 11 U.S.C. § 1111(b).[3] Pursuant to a court approved stipulation, Cal Fed had to and including the date it returned its ballot to the Debtor to make the election.

1. 11 U.S.C. § 506(a) provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

2. 11 U.S.C. §§ 362(d)(1) and (d)(2) provide:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(a) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the Debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

3. 11 U.S.C. § 1111(b) provides:

(b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—
(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or
(ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.
(B) A class of claims may not elect application of paragraph
(2) of this subsection if—
(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or
(ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.
(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

## DECISION

Cal Fed's motion requesting relief from the automatic stay is granted as (1) the Subject Property has no equity and (2) the Subject Property is not necessary to an effective reorganization, as Debtor's Plan of Reorganization is not confirmable.

Debtor's request to approve its Disclosure Statement is denied for the same reason.

Debtor's motion for reconsideration is denied, as well as Debtor's request for a hearing regarding its motion, as this court declines to follow the case of *D & W Realty Corporation,* 156 B.R. 140 (Bankr.S.D.N.Y. 1993).

## DISCUSSION

### Debtor's Plan Of Reorganization Is Not Confirmable

Among the issues before the court is the question of whether the Subject Property is necessary to an effective reorganization. *See 11 U.S.C. § 362(d)(2)(B).* It is the Debtor's burden to prove that the Subject Property is necessary to an effective reorganization under 11 U.S.C. § 362(d)(2)(B). *See 11 U.S.C. § 362(g).*[4]

In *United Savings v. Timbers of Inwood Forest Assn., Ltd.,* 484 U.S. 365, 377, 108 S.Ct. 626, 632, 98 L.Ed.2d 740, 951 (1988) the Supreme Court stated, in pertinent part, the following regarding the application of § 362(d)(2)(B).

[N]ot merely a showing that if there is conceivably to be an effective organization

this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the *en banc* court in this case, have property said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

■ In order for there to be an effective reorganization, there must exist a reasonable possibility of a successful reorganization. Where it appears from the evidence that a proposed plan of reorganization cannot meet the requirements of 11 U.S.C. § 1129(a), no effective reorganization is possible. *In re Anderson Oaks (Phase I), Ltd., Partnership,* 77 B.R. 108 (Bkrtcy.U.Tex.1981); *Matter of 8th Street Village Ltd. Partnership,* 88 B.R. 853 (Bkrtcy.N.D.Ill.1988).

■ The Debtor has failed to establish that its proposed Plan is confirmable. Upon considering the record before it, this court finds that the Plan cannot satisfy the requirements of 11 U.S.C. §§ 1129(a)(1) and (a)(10).[5] Therefore, no effective reorganization is possible.

Section 1129(a)(1) provides that a court may confirm a plan of reorganization only if the plan complies with the applicable provisions of the Bankruptcy Code. The phrase "applicable provisions" has been interpreted to include 11 U.S.C. § 1122,[6] which govern the classification of claims and interests. *Kane v. Johns–Mansville Corp.,* 843 F.2d 636, 648–9 (2nd Cir.1988); 5 *Collier on Bankruptcy* ¶ 1129.2 (15th ed. 1992).

---

4.  11 U.S.C. § 362(g) provides:
    In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
    (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
    (2) the party opposing such relief has the burden of proof on all other issues.

5.  11 U.S.C. §§ 1129(a)(1) and (a)(10) provide:
    (a) The court shall confirm a plan only if all of the following requirements are met:
    (1) The plan complies with the applicable provision of this title.
    \*    \*    \*    \*    \*    \*
    (10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan,

determined without including any acceptance of the plan by an insider.

6.  11 U.S.C. § 1122 provides:
    (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
    (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

In the instant case, the sole purpose and effect of the Debtor's separate classification of Cal Fed's unsecured claim is to gerrymander classes in order to obtain the acceptance of an impaired class and thus attempt to satisfy the requirements of § 1129(a)(10). The Debtor has failed to present sufficient justification to warrant the separate classification of Cal Fed's unsecured claim. The Debtor acknowledged during the September 9, 1993 hearing that without the separate classification of Cal Fed's deficiency claim, the Debtor's Plan was not confirmable, as the requirements of § 1129(a)(10) could not be met.

As stated in pertinent part by the Court of Appeals for the Fifth Circuit in the case of the *Matter of Greystone III Joint Venture,* 948 F.2d 134, 139 (5th Cir.1993):

> the one clear rule that merges from the otherwise muddled case law in § 1122 claim classification is that "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."

Further, the Court of Appeals for the Third Circuit in the case of *John Hancock Mutual Life Insurance Company v. Route 37 Business Park Associates,* 987 F.2d 154, 158 (3d Cir.1993), stated in pertinent part:

> Unfortunately, the Code does not expressly address the question presented by such a scheme. The provision of the Code that sets out the general rule regarding the classification of claims, Section 1122(a), expressly provides only that claims that are not "substantially similar" may not be placed in the same class; Section 1122(a) does not expressly provide that "substantially similar" claims may not be placed in separate classes.

> Nevertheless, it seems clear that the Code was not meant to allow a debtor complete freedom to place substantially similar claims in separate classes. The critical confirmation requirements set out in Section 1129(a)(8) (acceptance by all impaired classes) and Section 1129(a)(10) (acceptance by at least one impaired class in the event of a "cram down") would be seriously undermined if a debtor could gerrymander classes. A debtor could then construct a classification scheme designed to secure approval by an arbitrarily designed class of impaired claims even though the overwhelming sentiment of the impaired creditors was that the proposed reorganization of the debtor would not serve any legitimate purpose. This would lead to abuse of creditors and would foster reorganizations that do not serve any broader public interest.

> With these considerations in mind, we held in *Matter of Jersey City Medical Ctr.,* 817 F.2d 1055, 1061 (3d Cir.1987), that "the classification of the claims or interests must be reasonable." We stated that the code does not necessarily prohibit the placement of similar claims in different classes (*id.*), but we quoted the following observation with approval:

> > [T]here must be some limit on a debtor's power to classify creditors in such a manner [to assure that at least one class of impaired creditors will vote for the plan and make it eligible for cram down consideration by the court]. The potential for abuse would be significant otherwise. Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class.

> *Id.,* quoting *In re U.S. Truck Co., Inc.,* 800 F.2d 581, 586 (6th Cir.1986) (footnote omitted).[6]

See also *In re Bryson Properties, XVIII,* 961 F.2d 496 (4th Cir.1992); *Matter of Lumber Exchange Building, Ltd. Partnership,* 968 F.2d 647 (8th Cir.1992); and *Hanson v. First Bank of South Dakota,* 828 F.2d 1310 (8th Cir.1987); *In re Johnson,* 140 B.R. 526 (9th Cir.BAP 1992).

As the Debtor's Plan cannot meet the requirements of § 1129(a), the court need not consider whether this Plan meets the requirements of 11 U.S.C. § 1129(b), as

1129(b)(1)[7] mandates that the requirements of § 1129(a), except § 1129(a)(8), must be met before § 1129(b) may be applied.

The Debtor's request to approve its filed Disclosure Statement is denied in view of this court's determination that the Debtor's Plan is not confirmable.

Cal Fed's motion for relief from the automatic stay is granted as (1) there is no equity in the Subject Property and (2) the Subject Property is not necessary for an effective reorganization, as Debtor's Plan is not confirmable.

### Denial Of Debtor's Motion For Reconsideration

At the close of the September 9, 1993 proceedings, the court announced from the bench its decisions to grant relief from stay and deny approval of Debtor's Disclosure Statement.

Prior to the issuance of this Memorandum and accompanying order, the Debtor filed a motion for reconsideration requesting a hearing on shortened notice.

In its motion, the Debtor requested this court to reconsider its decisions by approving its Disclosure Statement and denying Cal Fed's motion for relief from the automatic stay. In support of its motion, Debtor referred to the recent case of *In re D & W Realty Corporation,* 156 B.R. 140 (Bankr. S.D.N.Y.1993) and asked this court to apply the conclusions reached in that case to the instant case.

The D & W Realty Corporation case involved a single asset real estate case wherein the Debtor's proposed a plan of reorganization separately classified the unsecured portion of a non-recourse mortgagee's claim from other unsecured claims. In overruling the mortgagee's objections to the separate classification of its unsecured claim and approving the debtor's disclosure statement, the court set forth the following conclusions regarding the classification issue:

This court concludes that separate classification is not only appropriate, it is in fact mandated by the Bankruptcy Code and Rules. Separate classification ensures that the right of election provided in Bankruptcy Code § 1111(b) is available. Separate classification also gives the undersecured mortgagee the power to prevent confirmation under Code § 1129(a), although confirmation under the so-called cram-down provisions of Code § 1129(b) may be possible. In short, separate classification enfranchises, rather than disenfranchises, the undersecured mortgagee.[3]

This court disagrees with these conclusions and declines to apply them to the instant case.

In the instant case, this court has determined that the separate classification of Cal Fed's unsecured deficiency claim is inappropriate and in violation of the Bankruptcy Code, as its sole purpose was to gerrymander an affirmative vote on a reorganization. This court submits that the Code does not mandate the separate classification of an unsecured claim where it constitutes an abuse of the reorganization process.

Further, the classification of the unsecured portion of the undersecured creditors' claim within the same class as other unsecured creditors does not impair or impede the right of the undersecured creditor to make the § 1111(b)(2) election. It is that portion of the undersecured creditors' allowed claim which under 11 U.S.C. § 506(a) constitutes the allowed secured claim that is eligible to make the election under 1111(b)(2). The class in which the allowed secured claim is classified is the class eligible to make the election. The class of unsecured creditors in which the deficiency claim is classified is not the class eligible to make the election, as none of the members of the unsecured class (including the unsecured deficiency claim) meet the eligibility requirement that the claim must be secured by a lien on property of the estate. Therefore, in terms of the eligibility to make the § 1111(b)(2) election, it is of no consequence whether the deficien-

---

**7.** 11 U.S.C. § 1129(b)(1) provides:
    (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall con-

firm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

cy claim is classified separately or with other unsecured claims.

In *5 Colliers On Bankruptcy,* ¶ 1111.02[4] 15th ed. (1992), the following was stated in pertinent part regarding the 1111(b)(2) election:

Although section 1111(b)(1)(A)(i) speaks in terms of classes of claims, the only time that an electing class of secured claims will have more than one member is where a number of creditors hold claims on a parity one with the other which are secured by a lien of equal rank on the same property.[26] Multiple member classes will exist in the case of publicly issued secured debentures where an indenture trustee holds a lien on behalf of the debenture holders. Such a class is also possible in the case of a private placement or institutional financing where one institution holds a lien on property for itself and as agent for a group of creditors. Mechanics lienors may also comprise such a class.

The section 1111(b)(2) election is a somewhat simpler concept if one presumes that each secured creditor in a case will be a member of a separate class and notwithstanding section 1111(b)(2) will have the right to vote a claim as a sole member of its class in an amount equal to the creditor's allowed secured claim. As has previously been discussed, the allowed amount of a "claim" is determined under section 502 and the portion of an "allowed claim" which is an "allowed secured claim" is determined by valuation of the collateral under section 506(a) subject to the exception created under section 1111(b)(2).[27]

If there is more than one member of a class of secured creditors, the class can exercise the election only by an affirmative vote of at least two-thirds in amount and a majority in number of allowed claims of a class. Note that the percentages are not limited to claims that are voted. In order to qualify to make the election interest, as secured creditors, in such property must not be of inconsequential value. In other words, in order to be eligible for the section 1111(b)(2) election, a creditor must have (i) a "claim," (ii) which is allowed under section 502, (iii) which is secured by a lien on property of the estate, (iv) which property has a value greater than claims which are secured by liens against the

property which are senior to the creditor's lien.

The contents of this Memorandum shall constitute the Court's Findings of Fact and Conclusions of Law.