**In re BARNEY and CAREY COMPANY, Debtor.**

**Bankruptcy No. 93–19167–JNF.**

United States Bankruptcy Court, D. Massachusetts.

July 8, 1994.

Bruce D. Levin, Boston, MA, for debtor.

M. Ellen Carpenter, Boston, MA, for Resolution Trust Corp.

Richard N. Gottlieb, Franklin, MA, for F.D.I.C.

Jeffrey S. Ogilvie, Boston, MA, for Official Unsecured Creditors' Committee.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I.  INTRODUCTION

The matters before the Court for decision are the objections of the Federal Deposit Insurance Corporation, as Liquidating Agent of Capitol Bank and Trust Company (the "FDIC"), and the Resolution Trust Corporation, as the Receiver of New England Federal Savings Association (the "RTC"), to the Second Amended Plan (the "Plan") filed by the above-referenced debtor, Barney and Carey Company (the "Debtor").  The FDIC and the RTC object to the adequacy of the Debtor's Disclosure Statement and to confirmation of the Plan on the grounds that the Debtor's proposed separate classification of

their deficiency claims from the claims of other unsecured creditors is impermissible and precludes confirmation of the Plan. The Debtor, the RTC, and the FDIC have filed a stipulation of facts and all parties, including the Official Committee of Unsecured Creditors, have filed briefs. After hearing on May 17, 1994, the Court took the propriety of the Debtor's classification scheme under advisement. *See* Fed.R.Bankr.P. 3013.[1] The Official Committee of Unsecured Creditors (the "Committee") has not taken a position on the issue of separate classification, but has stated that it will object to the Debtor's Plan, in the event that the class of unsecured creditors (Class 9) votes to reject the Plan, on the ground that it unfairly discriminates against the general unsecured creditors and violates the requirements of 11 U.S.C. § 1129(b).

## II. FACTS

The material facts are undisputed. The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 13, 1993. Since that date, the Debtor has been operating its retail lumber sales business as a debtor-in-possession. During the pendency of the case, the Debtor obtained authority to sell its real estate in Quincy, Massachusetts (the site of one of its two locations) for the sum of $1,850,000. The Debtor continues to operate another retail location in Brookline, Massachusetts.

The RTC filed a Proof of Claim in the sum of $1,025,789.57. As security for this claim, the RTC holds 1) a second mortgage on the Quincy premises (junior to the first mortgage of Hibernia Savings Bank, which is owed approximately $1,400,000); 2) a first mortgage on the Debtor's Brookline real estate; and 3) a mortgage on real estate owned by the Debtor's principal, which is not property of the Debtor's bankruptcy estate. By operation of 11 U.S.C. § 506(a) and (d), the claim of the RTC in this case is undersecured to the extent of approximately $500,000.

Under the Plan, the Debtor proposes to pay the secured claim of the RTC, denominated as Class 5, by payment of the net proceeds from the sale of the Quincy real estate. The Debtor proposes to pay the allowed unsecured claim of the RTC, denominated in the Plan as Class 6, with a payment in an agreed upon amount or, in the absence of an agreement, by payment of the claim in full, within 121 months from the effective date of the Plan, in 120 equal monthly installments, with interest at the rate of 7 percent each year. The Debtor also proposes a discount for prepayment of the claim based on a sliding scale.

The FDIC filed a Proof of Claim in the sum of $396,695.74. As security for this claim, the FDIC has a first security interest in the Debtor's personal property, including inventory, equipment and accounts receivable and the proceeds thereof. By operation of 11 U.S.C. § 506(a) and (d), the claim of the FDIC is undersecured to the extent of approximately $341,000.

Under the Plan, the Debtor proposes to pay the allowed secured claim of the FDIC (Class 7), in cash, 90 days following the effective date. The Debtor proposes to pay the allowed unsecured claim of the FDIC, denominated as Class 8, within 121 months from the effective date, in equal monthly installments, with interest at the rate of 8 percent per year. The Debtor also provides for a prepayment credit with respect to this claim, depending upon the year of payment.

Under the Plan, the Debtor proposes to pay its general unsecured creditors (Class 9) 15 percent of their allowed claims, in cash, 90 days after the effective date of the Plan, or upon allowance, whichever date is later.[2]

---

1. Fed.R.Bankr.P. 3013 provides: "For the purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors and equity security holders pursuant to §§ 1122, 1222(b)(1), and 1322(b)(1) of the Code."

2. Prior to the filing of the Plan now under consideration, the Debtor filed two previous plans. On February 10, 1994, it filed its first plan of

reorganization in which it proposed to pay the secured claim of the RTC, denominated Class 5, the -net proceeds from the sale of the Quincy property, and to pay the RTC's deficiency claim, in full, plus 8 percent, in 120 monthly installments, with a credit towards principal for prepayment.

With respect to the FDIC's claim, Class 6, the first plan provided for payment of the allowed

The Debtor revealed in its Disclosure Statement and at various hearings during the course of these proceedings that the claims of the FDIC and the RTC are recourse claims and have been guaranteed by the Debtor's principal, Keevin Geller.

In May of this year, the Court denied the Debtor's continued use of cash collateral because the Debtor's financial reports for the past three months indicated that it was sustaining operating losses and accruing tax liabilities on a post-petition basis. The Debtor's Second Amended Plan and Disclosure Statement illustrate the Debtor's cash flow problems as the interest rate the Debtor proposed to pay the RTC in its first two plans has been reduced in its third plan and the payments to the unsecured creditors do not begin until 90 days from the effective date of the Plan.

## III. ARGUMENTS OF THE PARTIES

### A. The RTC and the FDIC

The RTC and the FDIC jointly argue that the classification scheme embodied in the Debtor's Plan, namely the separate classification of their deficiency claims from the claims of general unsecured creditors, is improper. They maintain that it is designed for an illegitimate purpose—to manipulate their voting rights since they would control the votes with respect to a properly formulated plan that classified all unsecured claims in one class. The RTC and FDIC contend that their rights as secured creditors to make an election under 11 U.S.C. § 1111(b) do not give rise to a legal distinction between their deficiency claims and the claims of the unsecured creditors that justifies segregation of their deficiency claims.[3] They request that the Court reject the reasoning of Chief Judge Queenan in the decision of *In re Bjolmes Realty Trust,* 134 B.R. 1000 (Bankr. D.Mass.1991), adopt the reasoning of the majority of courts that have refused to permit separate classification of deficiency claims from regular trade debts in Chapter 11 plans, see, e.g., *In re Boston Post Road Ltd. Partnership,* 21 F.3d 477 (2d Cir.1994); *John Hancock Mut. Life Ins. Co. v. Rt. 37 Bus. Park Assocs.,* 987 F.2d 154 (3rd Cir.1993); *In re Lumber Exch. Bldg. Ltd. Partnership,* 968 F.2d 647 (8th Cir.1992); *In re Bryson Properties XVIII,* 961 F.2d 496 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *In re Greystone III Joint Venture,* 948 F.2d 134 (5th Cir.1991), *as amended following reh'g en banc,* 995 F.2d 1274 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re Cranberry Hill Assocs. Ltd. Partnership,* 150 B.R. 289 (Bankr.D.Mass. 1993); *In re Cantonwood Assocs. Ltd. Partnership,* 138 B.R. 648 (Bankr.D.Mass.1992), and deny confirmation of the Debtor's Plan. The FDIC and the RTC assert that the First

---

claim, in full, in 120 equal monthly installments, with 8 percent per annum interest rate. Like the treatment of the RTC claim, the amount due to the Class 6 claimholder would be discounted for prepayment. The Debtor proposed to pay unsecured creditors, Class 7, a 15 percent dividend in two installments, 5 percent on the effective date, and 10 percent one year from the effective date.

On April 22, 1994, the Debtor filed its second plan, captioned First Amended Plan of Reorganization. In its second plan, the Debtor proposed to pay Class 5, the allowed secured claim of the RTC, the net proceeds from the sale of the Quincy property, to pay Class 6, the deficiency claim of the RTC, in full over 121 months, with interest of 8 percent, with a reduction in the event of prepayment, as set forth on a schedule.

The Debtor proposed to pay Class 7, the FDIC's secured claim, in full, on the effective date and Class 8, the FDIC deficiency claim, in full, in equal monthly installments, within 121 months from the effective date, with interest at 8 percent per year, with a credit for prepayment.

The Debtor proposed to pay general unsecured creditors, Class 9, a 15 percent dividend on the effective date of the plan or upon allowance of the claim, whichever occurred later.

3. Section 1111(b) permits a creditor with a non-recourse loan to elect recourse status, thereby gaining a right to vote in the unsecured creditor class. 11 U.S.C. § 1111(b). As the court in *In re Woodbrook Assocs.,* 19 F.3d 312 (7th Cir.1994), noted:

> A § 1111(b) unsecured deficiency claim is created in favor of an undersecured creditor in the amount of the lien in excess of the collateral's value, *i.e.,* an undersecured creditor has a secured claim up to the value of the collateral and an unsecured claim for the deficiency. 11 U.S.C. §§ 506(a), 1111(b). An undersecured creditor, however, may waive its deficiency claim and elect, under § 1111(b)(2), to have its claim treated as secured for the entire amount of the debt.

*Id.* at 317 n. 2.

Circuit's decision in *Granada Wines, Inc. v. New England Teamsters and Trucking Indus. Pension Fund,* 748 F.2d 42 (1st Cir. 1984), requires the placement of unsecured claims together in a single class. Finally, they argue that even if the Debtor were allowed some latitude in classifying unsecured claims, the Debtor has proffered no legitimate business justification for its proposed separate classification of undersecured deficiency claims.

### B. The Debtor

The Debtor argues that the unsecured claims of the FDIC and the RTC may be separately classified from the claims of other unsecured creditors because the Bankruptcy Code does not require all similar claims to be placed in a single class. The Debtor states that its motivation is not "gerrymandering", which it concedes is prohibited. On the contrary, it points out that its Plan provides better treatment for the deficiency claims of the RTC and the FDIC than for the claims of other unsecured creditors, and maintains that its motivation is not to disenfranchise the rights of the RTC and FDIC. The Debtor requests that the Court adopt the reasoning of the Court in *Bjolmes* and rule that the ability of secured creditors to have their deficiency claims treated as fully secured pursuant to 11 U.S.C. § 1111(b)(2) constitutes a sufficient difference in legal character to justify separate classification. Even if the Court does not accept the reasoning of *Bjolmes,* the Debtor urges the Court to find that legitimate business reasons permit separate classification of the claims of the RTC and the FDIC from general unsecured creditors. The Debtor argues that the mortgagees' motivation to resist the Plan and realize on their collateral, thereby depriving general unsecured creditors of a dividend on their claims, is sufficient reason for separate classification. In the Debtor's view, the general unsecured creditors, on the one hand, and the RTC and the FDIC, on the other, have different voting incentives and conflicting interests in this reorganization case, which justify separate classification of deficiency claims. Accordingly, the Debtor requests approval of its Disclosure Statement and the opportunity to move forward towards confirmation of its Plan.

### C. The Committee

The Committee does not oppose separate classification of the FDIC and RTC claims from the claims of the general unsecured creditors. However, it does object to the Debtor's treatment of Class 9 claims on the ground that the Plan unfairly discriminates against Class 9 in violation of 11 U.S.C. § 1129(b)(1) since the unsecured deficiency claims of the FDIC and the RTC are paid in full while the general unsecured claims are slated to receive only a 15 percent dividend.

## IV. DISCUSSION

### A. Classification of Claims

■ The Bankruptcy Code provides two different methods by which a plan proponent can obtain confirmation: 1) under 11 U.S.C. § 1129(a), the proponent must obtain approval by each impaired class of claims; and 2) under 11 U.S.C. § 1129(b), the so-called "cramdown" section, the proponent must obtain approval by at least one impaired class of claims.[4] In the present case, the Debtor's plan creates three classes of impaired unsecured claims. It is undisputed that the FDIC and RTC would not accept any plan that failed to immediately pay them in full or provide for the surrender of their collateral. It also is undisputed that the Debtor would be unable to obtain acceptance of a single class of unsecured claims that included the deficiency claims of the FDIC and the RTC, since they would control the class, thereby blocking confirmation. However, the Debtor, by classifying the deficiency claims separately from the claims of other unsecured creditors, has created an impaired class that, in the Debtor's view, is likely to accept the Plan, a precondition to approval of a cramdown plan. *See* 11 U.S.C. § 1129(a)(10).

The Debtor's classification of claims in its Plan is crucial to confirmation in view of the

---

4. Under section 1129(b), the plan must also satisfy all the requirements of 11 U.S.C. § 1129(a), except (a)(8), and must not "discriminate unfairly" and must be "fair and equitable" with respect to all rejecting, impaired classes. 11 U.S.C. § 1129(b).

provisions of 11 U.S.C. § 1129(a)(10), which prevents confirmation in the absence of acceptance by at least one class of impaired claims. Section 1129(a)(10) provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

. . .

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10).

A plan proponent's ability to place unsecured claims in separate classes is governed by 11 U.S.C. § 1122 which provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122. As recently stated by one commentator, "[T]he statute is not a model of draftsmanship. . . . What is far from clear is whether the plan *must* place all 'substantially similar' claims into one class. The statute contains no express mandate that this be done. Nor are we favored with statutory guidelines indicating what claims are 'substantially similar'". 5 James F. Queenan, Philip J. Hendel & Ingrid M. Hillinger, *Chapter 11 Theory and Practice*, § 30.16, at 30:51 (LRP 1994) (emphasis added). The legislative history does not clarify the congressional intent, and indeed, adds to the confusion. The House and Senate Reports indicate that section 1122 codifies "current law", but fail to note that classification rules depended on whether the case was a case under Chapter X, XI or XII of the Bankruptcy Act. *Id.* at 30:52. In light of these uncertainties in section 1122, a split of authority has developed. While the Sixth Circuit has adopted a flexible approach to classification, focusing on whether there is a legiti-

mate business justification for the plan's separate classification, *see In re U.S. Truck Co., Inc.*, 800 F.2d 581, 587 (6th Cir.1986) (unsecured claim arising from rejection of collective bargaining agreement could be separately classified from other unsecured claims because union's unique "non-creditor" interest motivated its rejection), the First Circuit has adopted a strict approach, namely, that all claims of equal legal priority must be placed in the same class, subject to the administrative convenience exception. *See Granada Wines*, 748 F.2d at 46 ("Separate classifications for unsecured creditors are only justified 'where the legal character of their claims is such as to accord them a status different from the other unsecured creditors.' ").

In light of the two approaches, a widening schism has emerged in decisions considering the extent of a debtor's flexibility to separately classify deficiency claims of undersecured mortgage holders from the claims of other unsecured creditors. The majority of courts have denied confirmation of plans that separately classify deficiency claims, reasoning that they are substantially similar in legal nature and priority to the claims of general unsecured creditors, and thus must be placed in a single class. In short, they hold that section 1111(b), in and of itself, does not make a deficiency claim different from other general unsecured claims and that "separate classification of unsecured claims solely to create an impaired assenting class will not be permitted; the debtor must adduce credible proof of a legitimate reason for separate classification of similar claims". *Boston Post Road Ltd. Partnership*, 21 F.3d at 483. *See also Greystone III Joint Venture*, 995 F.2d at 1279; *Rt. 37 Bus. Park Assocs.*, 987 F.2d at 161–62; *Lumber Exch. Bldg. Ltd. Partnership*, 968 F.2d at 649; *Bryson Properties, XVIII*, 961 F.2d at 502; *In re Tucson Self–Storage, Inc.*, 166 B.R. 892 (9th Cir. BAP 1994); *Fairfield Exec. Assocs. v. Hyperion Credit Cap. Partners (In re Fairfield Exec. Assocs.)*, 161 B.R. 595, 601 (D.N.J.1993); *Cranberry Hill Assocs. Ltd. Partnership*, 150 B.R. at 290.

A minority approach, while still examining the legal bases of the separately classified claims, has permitted separate classification

of deficiency claims arising from non-recourse loans, reasoning that the "[s]ignificant disparities do exist between the legal rights of the holder of a § 1111(b) claim and the holder of a general unsecured claim". *See In re Woodbrook Assocs.*, 19 F.3d 312, 318 (7th Cir.1994) (unsecured deficiency claims created by section 1111(b), which makes non-recourse claims recourse in Chapter 11, are not substantially similar to unsecured claims and must be separately classified);[5] *In re Overland Park Merchandise Mart Partnership, L.P.*, 167 B.R. 647 (Bankr.D.Kan.1994) ("the rights of nonrecourse unsecured claimholders are not the same under the Code as those of recourse unsecured claimholders."); *In re SM 104 Ltd.*, 160 B.R. 202, 219–21 (Bankr. S.D.Fla.1993) (the legal rights of general unsecured creditors and a non-recourse secured lender with an artificial deficiency claim under section 1111(b) are not substantially similar and cannot be classified together). *Contra, In re D & W Realty Corp.*, 165 B.R. 127 (S.D.N.Y.1994), *rev'g*, 156 B.R. 140 (Bankr.S.D.N.Y.1993) (the artificial unsecured deficiency claim afforded an undersecured nonrecourse creditor may not be classified separately from other unsecured claims).

Within this minority, the court in *Bjolmes*, 134 B.R. at 1003, while recognizing the applicability of the strict approach of *Granada Wines*, has allowed separate classification of a deficiency claim arising from a *recourse* loan on the grounds that the right to make an election under section 1111(b) is a difference in rank with respect to property and the undersecured creditor's vote will be uniquely affected by proposed treatment of secured claim under plan. In *Bjolmes*, the court found a sufficient legal basis for separate classification of a secured party's deficiency claim from trade creditors by virtue of "the potential held by the FDIC's unsecured claim for a difference in legal rank with the trade debt" due to the secured party's right to make an election under section 1111(b). *Id.*

Another approach, based upon the flexible standard adopted by the Court of Appeals for the Sixth Circuit in *U.S. Truck Co.*, 800 F.2d at 587, focuses on factual and practical considerations and gives the debtor discretion to form classes based on such considerations, including the debtor's desire to continue to do business with certain creditors that will be necessary after confirmation. *See In re Jersey City Medical Ctr.*, 817 F.2d 1055, 1061 (3d Cir.1987) ("classification of the claims or interests must be reasonable");[6]

**5.** In *Woodbrook*, the court explained its holding as follows:

> Significant disparities do exist between the legal rights of the holder of a § 1111(b) claim and the holder of a general unsecured claim which render the two claims not substantially similar and which preclude the two from being classified together under § 1122(a). Thus, we cannot accept the proposition implicit in *Greystone* that separate classification of a § 1111(b) claim is nearly conclusive evidence of a debtor's intent to gerrymander an affirmative vote for confirmation. These disparities in rights stem from the most obvious difference between the two claims: a general unsecured claim exists in all chapters of the Code, while a § 1111(b) claim exists only as long as the case remains in Chapter 11 and, once converted to a Chapter 7 case, recovery is limited to its collateral. *Compare* 11 U.S.C. § 103(f) *with* 11 U.S.C. § 502(b)(1). This difference is amplified when the debtor is a partnership (as in this case) and the creditors face possible failure of its Chapter 11 case. Under such circumstances, the general unsecured creditors can seek equitable relief to prevent dissipation of the assets of the general partners, who upon conversion to Chapter 7, are liable for the debts of the partnership. Such equitable relief

is not likely to be available to a § 1111(b) claimant, whose recovery is confined to its collateral.

*Id.* at 318–19.

**6.** In *Rt. 37 Bus. Park Assocs.*, the Court of Appeals for the Third Circuit, in rejecting the debtor's arguments with respect to section 1111(b) and voting incentives, stated the following:

> While our opinion in *Matter of Jersey City Medical Ctr.* did not spell out the factors that should be considered in determining whether a classification scheme is reasonable, it seems clear to us that this determination must be informed by the two purposes that classification serves under the Code: voting to determine whether a plan can be confirmed (*see* 11 U.S.C. § 1129(a)(8), (10) (1988)) and treatment of claims under the plan (*see* 11 U.S.C. § 1123(a)(4) (1988)). Thus, where … the sole purpose and effect of creating multiple classes is to mold the outcome of the voting, it follows that the classification scheme must provide a reasonable *method for counting votes*. In a "cram down" case, this means that each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed

*In re Richard Buick, Inc.*, 126 B.R. 840 (Bankr.E.D.Pa.1991), or the secured creditor's motivation in voting its deficiency claim. *See Bjolmes*, 134 B.R. at 1003; *In re Aztec Co.*, 107 B.R. 585, 587 (Bankr.M.D.Tenn. 1989). *Cf. Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir.1994) ("the question of whether claims are 'substantially similar' within the meaning of § 1122(a) is a question of fact, and thus reviewable under the clearly erroneous standard ... [in contrast to] ... the issue of a bankruptcy court's *approval* of a separate classification ... [being] ... 'a question of law, freely reviewable on appeal.'" [*Greystone*,] 995 F.2d at 1279 n. 5.").

■ However, all courts agree, even under the least rigid standard, that "artificial classification" may not be used to "gerrymander", that is, for the purpose of creating one accepting impaired class to improperly manipulate the voting requirements of section 1129(a)(10). "[A]lthough separate classification of similar claims may not be prohibited, it may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims." *Bryson Properties*, 961 F.2d at 498. *See Greystone III Joint Venture*, 948 F.2d at 139. *See also In re Holywell Corp.*, 913 F.2d 873 (11th Cir.1990); *Hanson v. First Bank of South Dakota*, 828 F.2d 1310 (8th Cir.1987).

■ Whether the determination of substantial similarity of claims for the purpose of classification under section 1122(a) is a question of fact, *see Johnston*, 21 F.3d at 327; *In re Commercial Western Fin. Corp.*, 761 F.2d 1329, 1334 (9th Cir.1985), or a question of law, the burden is on the debtor to show a legitimate non-gerrymandering reason for the separate classification. *Tucson Self–Storage, Inc.*, 166 B.R. at 898. The Court recognizes (as does the Debtor) that *Granada Wines* requires that the Debtor establish that the legal nature of the separately classified claims differ. Accordingly, the Debtor must satisfy the so-called "strict approach"

reorganization should proceed. Otherwise, the classification scheme would simply constitute a method for circumventing the requirement set out in 11 U.S.C. § 1129(a)(10) (1988).

that is the rule in this circuit. *See Bjolmes*, 134 B.R. at 1003.

In the present case, the Debtor has failed to provide a rational distinction between the claims of the RTC and the FDIC, on the one hand, and the general unsecured claims, on the other, to support a finding that there is a distinction with respect to the legal nature of the claims, particularly as the claims of the RTC and the FDIC are recourse notwithstanding section 1111(b). Moreover, there is no legal distinction between the RTC and FDIC deficiency claims and the general unsecured claims because neither secured party has made the election under section 1111(b)(2). Thus, since the secured party elections were not exercised, the unsecured deficiency claims remain of the same legal priority as the general unsecured claims.

This is not the situation in *Woodbrook* and *SM 104, Ltd.*, where non-recourse claims were made recourse by operation of section 1111(b)(1)(A) and the deficiency claims would not have existed in the absence of the Chapter 11 cases. Thus, this Court could permit separate classification only if it were to follow *Bjolmes* or the FDIC or RTC loans were non-recourse. This Court respectfully declines to follow *Bjolmes*, as it finds that the ability to make the secured party election is insufficient to permit separate classification of the undersecured portion of a recourse obligation. If the loans that are the basis of a bifurcated secured claim were extended on a non-recourse basis, there might be a distinction between the legal nature of those claims and trade claims sufficient to support separate classification because the deficiency claim would not exist outside of Chapter 11. This situation does not exist in this case, and this Court need not decide whether *Granada Wines* would permit separate classification under those circumstances or whether the United States Court of Appeals for the First Circuit would follow the views of the Second, Third, Fourth, Fifth, and Eighth Circuits. Accordingly, the Debtor's separate classification scheme is not supported by adequate

987 F.2d at 159.

legal distinctions between the claims, and the Court will not approve the Plan as proposed.

The Court observes that even if it were to adopt a flexible approach, the classification scheme proposed by the Debtor would fail that test because the Debtor has proffered no legitimate business reason for its classification scheme, *see Boston Post Road Ltd. Partnership,* 21 F.3d at 483 (treating trade creditors more favorably than undersecured creditor because of concerns about the viability of future business is not a legitimate business reason). The Court is convinced that the classification scheme was prompted only by the goal of creating a class of accepting claims.

### B. Unfair Discrimination

■ In addition to the defects in the Debtor's classification scheme, the Court would not confirm this plan based on the Committee's outstanding objection, assuming Class 9 voted to reject the Debtor's Plan. A condition of confirmation of a cramdown plan is that it not discriminate unfairly against a dissenting class. Unfair discrimination is not defined in the Bankruptcy Code, but the legislative history indicates that "... this criterion is to protect creditors from unfair discrimination between classes of claims with equal priority." 3 David G. Epstein, Steve H. Nickles & James White, *Bankruptcy,* § 10–22, at 41 (West 1992).

> From the perspective of unsecured trade claims, there is no unfair discrimination as long as the total consideration given all other classes of equal rank does not exceed the amount that would result from an exact aliquot distribution.
>
> \* \* \* \* \* \*
>
> The criterion of unfair discrimination is not derived from the fair and equitable rule or from the best interests of creditors test. Rather it preserves just treatment of a dissenting class from the class's own perspective.

H.Rep. No. 595, 95th Cong., 1st Sess. 416–417 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6372–6373.

■ The prohibition against unfair discrimination requires equal treatment of similarly situated creditors. *See, In re AOV Indus., Inc.,* 792 F.2d 1140, 1150 (D.C.Cir. 1986); *Granada Wines,* 748 F.2d at 46; *In re Orfa Corp. of Philadelphia,* 129 B.R. 404, 416 (Bankr.E.D.Pa.1991). Although the statute might permit some fair and reasonable differences in treatment among classes, the discrimination must be fair and supported by a rationale basis. *Matter of LeBlanc,* 622 F.2d 872 (5th Cir.1980) (discrimination against unsecured insiders not unfair). Even if totally separate classification of mortgage deficiency and general unsecured claims were permissible, the unfair discrimination language of section 1129(b)(1) prohibits a debtor from proposing unreasonably different treatment between classes of similar claims. In other words, regardless of classification, the similarly situated claims of unsecured creditors and the deficiency claims of the mortgage holders must not be treated in such a disparate manner as to be unfair. *Tucson Self–Storage,* 166 B.R. at 898. Pursuant to the unfair discrimination test, "... differentiated treatment of similar classes intended merely to induce acceptance by one class fails." 5 Queenan et al., *supra,* § 31.07, at 31:11. The burden is on the Debtor to show that unequal treatment between classes having the same priority does not constitute unfair discrimination. 3 Epstein et al., *supra,* at § 10–22, at 41.

■ In the present case, the Debtor has not offered any reason or legitimate basis for paying the RTC and the FDIC 100 percent of their deficiency claims over ten years, while paying general unsecured creditors a dividend of 15 percent 90 days after the effective date of the Plan. One conceivable reason for the Debtor's proposal to pay the trade debt a lesser percentage than the deficiency claims of the RTC and the FDIC, claims of the same legal rank, is that the Debtor's principal guaranteed the FDIC and RTC obligations. The Debtor's proposal to prefer the RTC and FDIC is impermissible discrimination against the general unsecured creditor class. Although it is not known whether Class 9, the class of general unsecured claims, will accept the plan, and the standing of the RTC and FDIC to raise the issue of unfair discrimination is questionable,

if the unsecured creditor class were to vote against the plan, the Court would not confirm the plan under 11 U.S.C. § 1129(b)(1), because the Debtor has not shown that the disparate treatment does not constitute unfair discrimination. Finally, in proposing to pay debt subject to a guaranty a substantially greater dividend than the claims of general unsecured creditors, the Court believes that the Debtor has not proposed the plan in good faith, a prerequisite for confirmation under section 1129(a)(3).

## V. CONCLUSION

For these reasons, the Court will not confirm the Debtor's plan. The Debtor shall file a Third Amended Plan and a Disclosure Statement by July 22, 1994, failing which the case shall be converted to a case under Chapter 7 or dismissed.