**Bardwell C. SALMON, Petitioner–Appellant,**

v.

**LASER PLOT, INC., Respondent–Appellee.**

Civ. A. No. 95–40109–NMG.

United States District Court, D. Massachusetts.

Dec. 13, 1995.

James C. Donnelly, Jr., Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for Bardwell C. Salmon.

James H. Barnhill, Peters, Barnhill, & Rodolakis, Worcester, MA, for Laser Plot, Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is an appeal by Bardwell C. Salmon ("Salmon") from the rulings of the United States Bankruptcy Court entered on April 12, 1995 that 1) the Plan of Reorganization ("the Plan") of Laser Plot, Inc. ("Laser Plot" or "Debtor") was ambiguous, and 2) Debtor was not required to make any additional make-up payment to Salmon under the Plan. The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). Upon consideration of the briefs filed by the parties and oral arguments presented at a hearing on the appeal, this Court concludes that Salmon is entitled to the relief sought.

### Background

Laser Plot, filed a Chapter 11 petition with the Bankruptcy Court on December 3, 1992. On July 20, 1993, that Court issued an Order confirming the Debtor's Amended Plan of Reorganization. Paragraph 4.7 of the Plan provides that the class of unsecured creditors will be paid 50% of the allowed amount of their claims, with interest at 8% per annum, to be paid in 36 monthly installments. Paragraph 4.12 of the Plan, entitled "Resolution of Disputed Claims," contains the provision which lies at the heart of the pending controversy:

> When an objection [to a claim made by a purported creditor] is resolved by final order of the Bankruptcy Court, additional payments to the creditor, if required, from the separate bank account will be made with the next payment occurring at least 35 days after the last final order of the [Court]. The additional amount will be the amount which would have been paid under the monthly payment Plan if the objection had not been filed.

Although the Plan refers to a "separate bank account," it does not require Debtor to establish such an account. At the time the Plan was submitted for approval, however, Laser Plot, as a Debtor-in-Possession, had authority to establish separate bank accounts without the approval of the Bankruptcy Court.

Salmon, a former president of Laser Plot, sought to be included in the class of unsecured creditors that would receive payment pursuant to Paragraph 4.7 of the Plan. Laser Plot filed a timely objection to Salmon's claim, but the Bankruptcy Court ultimately denied the objection and allowed the claim of $263,037. During the several months that Debtor's objection to Salmon's claim was pending before the Bankruptcy Court, other members of the class of unsecured creditors had already begun receiving their monthly payments.

After the Bankruptcy Court finally allowed Salmon's claim, Debtor paid Salmon his first pro rata payment as provided for under the Plan. Salmon objected and filed a motion to compel Debtor to make an additional, lump sum payment, pursuant to Paragraph 4.12, that would restore him to the same relative position as his fellow class-members who had been receiving payments all along. The Bankruptcy Court denied Salmon's motion, ruling that 1) the Plan was ambiguous, and 2) based on extrinsic evidence, no make-up payment was called for.

In support of its determination that the Plan required no "additional payment" to Salmon, the Bankruptcy Court relied upon Section 10 of the Fourth Amended Disclosure Statement, which had been sent to creditors to solicit their votes for the Plan. That section provides:

> To the extent that the objections are not allowed [by the Bankruptcy Court], the payments to the successful creditor will begin with the payment which occurs at least 35 days after the last order resolving objections to claims becomes final.

The Bankruptcy Court concluded that the parties intended not to require "catch-up" payments on claims as to which objections had been overruled. This appeal followed.

### Standard of Review

■ Contract law principles govern the interpretation of a plan of reorganization. *E.g., Matter of Texas General Petroleum, Corp.*, 52 F.3d 1330, 1335 (5th Cir.1995); *In re UNR Industries, Inc.*, 173 B.R. 149, 157 (N.D.Ill.1994) (and cases cited therein). The determination whether a contract is ambiguous or unambiguous is a question of law, see *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir.1991), requiring this Court to review *de novo* the Bankruptcy Court's conclusion on that issue. If a contract is deemed ambiguous, then the intention of the parties is a question of fact, and the Bankruptcy Court's finding will be set aside only if clearly erroneous. *See, e.g., Dahar v. Raytheon Company*, 880 F.2d 1491, 1495 (1st Cir.1989); *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir.1990).

### Ambiguity

■ A contract is "ambiguous" when the terms used can reasonably support differing interpretations. *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F.Supp. 363, 370 (D.Mass.1991). When construing a contract, the Court must view the instrument as a coherent whole, considering "every phrase and clause ... [in light of] all the other phraseology contained in the instrument...." *Boston Edison Co. v. F.E.R.C.*, 856 F.2d 361, 365 (1st Cir.1988) (quoting *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 494 N.E.2d 374 (1986)). In so doing, the Court will be guided by common sense, justice and the probable intention of the parties. *Boston Helicopter Charter, Inc.*, 767 F.Supp. at 370. A contract which is not ambiguous must be enforced according to its terms. *Liberty Mut. Ins. Co. v. Gibbs*, 773 F.2d 15, 17 (1st Cir.1985).

■ After reviewing the document in its entirety, this Court concludes that the Plan is not ambiguous. Specifically, Paragraph 4.12, although hardly a model of draftsmanship, possesses a plain meaning which should not be controverted by resort to extrinsic evidence. That provision requires additional payments (in an amount defined by the last sentence of Paragraph 4.12) to be made when the Bankruptcy Court resolves an objection in favor of a party whose claim has been challenged by the Debtor. In the opinion of this Court, the phrase "if required" merely refers to the allowance or disallowance of an objection to a creditor's claim, i.e., if an objection is disallowed, an additional payment is required; if the objection is sustained, no such payment would be required.[1] Accordingly, this Court concludes, as a matter of law, that the Plan is not ambiguous and that it requires an additional payment to be made to Salmon.

■ Having so concluded, the Court notes in passing that Salmon would be entitled to an additional payment even if it had reached the opposite conclusion. Assuming that Paragraph 4.12 is

> completely ambiguous, so that neither possible meaning was more likely to have been intended than the other, a fundamental principle would control [nonetheless]: an ambiguous contract should be construed against the drafting party....

*LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4, 7 (1st Cir.1984); *see also Chelsea Industries, Inc. v. Accuray Leasing Corp.*, 699 F.2d 58, 61 ("[I]n case of doubt, an instrument is to be taken against the party that drew it"); *ER Holdings, Inc. v. Norton Co.*, 735 F.Supp. 1094, 1100 (D.Mass.1990) ("Massachusetts law construes ambiguous contractual language against the drafter"). Indeed, the drafter of an ambiguous term is generally held to any reasonable

---

1. Debtor argues that the "if required" language means that a catch-up payment would be owed only if the Bankruptcy Court were affirmatively to order ("require") such a payment, but that interpretation would violate a fundamental tenet of bankruptcy law that members of a class of creditors are to be treated equally. *See In re Barney and Carey Company*, 170 B.R. 17, 25 (Bankr.D.Mass.1994) ("The prohibition against unfair discrimination requires equal treatment of similarly situated creditors"). Were the Court to adopt Debtor's interpretation, Salmon would confront the risks of nonpayment for one year longer than his fellow class-members, i.e., he would be subjected to unfair discrimination.

562

interpretation attributed to it by the non-drafting party. *ER Holdings, Inc.,* 735 F.Supp. at 1100; *Merrimack Valley Nat'l Bank v. Baird,* 372 Mass. 721, 724, 363 N.E.2d 688 (1977). In the case at bar, therefore, Laser Plot, the drafter of the Plan, would properly be bound to Salmon's reasonable interpretation that Paragraph 4.12 requires the additional, make-up payment.

### ORDER

For the foregoing reasons, this Court concludes that Appellant, Bardwell C. Salmon, is entitled to an additional payment, pursuant to the last sentence of Paragraph 4.12 of the Plan. The ruling of the Bankruptcy Court is, therefore, REVERSED.

SO ORDERED.